## KELLER and others *v.* STOLZENBACH and others.

*(Circuit Court, W. D. Pennsylvania.* July 2, 1886.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—LACHES AS A BAR TO AN ACCOUNT FOR PROFITS.

To a bill to restrain infringement of a patent the defendants by plea set up a claim of right to use the patented apparatus in question, and the grounds thereof. The plaintiff having neglected for over two years to reply or set the plea down for hearing, the court, under equity rule 38, decreed that he was to be deemed to admit its truth and sufficiency, and that the bill be dismissed. The defendants were then suffered to continue to use the apparatus for nearly two years more, before a second (the present) suit was brought to restrain them. *Held,* that the court would not decree an account of profits, the defendants having acted under a *bona fide* claim of right, and there being on the other side acquiescence and inexcusable laches in seeking redress.

2. SAME—DAMAGES.

The proofs disclosing an established license fee of $1,000, *held, further,* that the amount of such fee was a just measure of compensation for the infringement.

In Equity.

*D. F. Patterson,* for complainants.

*Geo. H. Christy,* for defendants.

ACHESON, J. If it be conceded that where a profit or saving is shown to have accrued to an infringer beyond the amount of the established license fee for the use of the patented machine, the patentee suing in equity for an account of profits is not ordinarily to be limited to such fee; and assuming that the evidence discloses with sufficient clearness the number of bushels of sand treated by the patented apparatus on the dredging-boat Wharton McKnight, and the amount of the savings to the defendants thereby effected,— it still remains to be considered whether the defendants are justly chargeable with profits, in view of the exceptional circumstances of this case.

In the first place, be it observed, the defendants were not wanton infringers. They acted under a *bona fide* claim of right to use the invention, based on the late partnership relations and dealings between the patentee, the plaintiff Keller, and the defendant Pfeil. It is true, the decision of the court has been adverse to that claim, (20 Fed. Rep. 47;) but the question of right was fairly debatable, and the proofs left the defendants' integrity untouched. And then, in the second place, the plaintiffs' demands may well be moderated by reason of the laches imputable to them. The history of the case is this: The patented apparatus was put on the Wharton McKnight in the spring of 1879. Very shortly thereafter Keller brought suit in this court against Pfeil and his associates to restrain its use. To the bill the defendants filed a plea setting up Pfeil's claim of right to use the apparatus, and the grounds thereof. The plaintiff failed to reply to the plea, and, for a period of more than two years, neglected to move

in the cause, or put it in a condition for further prosecution; and eventually, on May 10, 1881, after notice, and under the provisions of the thirty-eighth equity rule, the court adjudged and decreed that the plaintiff was to be deemed to have admitted the truth and sufficiency of the plea, and that the bill be dismissed. The defendants were then suffered to continue the use of the apparatus on the Wharton McKnight for a period of nearly two years before the present suit was brought, on April 9, 1883.

Now, we have, indeed, decided that the decree dismissing the former bill for want of prosecution was no bar to this suit, but it by no means follows that it is to be without influence when we come to deal with the question of the extent of the relief which should be extended to the plaintiffs. The decree proceeded on the ground of the acknowledged truth and sufficiency of the plea implied by the plaintiff's inaction. The dismissal of his bill on this ground certainly left Keller in no better condition than he would have been if, with full knowledge of Pfeil's use of the patented apparatus on the Wharton McKnight under a claim of right, he had made no move by suit or otherwise to restrain him. Moreover, the dismissal of Keller's bill was followed by two years of acquiescence in the defendants' use of the invention on said boat. Thus, the tendency of Keller's course of conduct during the space of nearly four years was directly to encourage the defendants in the continued use of the apparatus.

A court of equity always discountenances laches. Hence, in *McLean* v. *Fleming*, 96 U. S. 245, it was held that while the plaintiff was entitled to an injunction to restrain infringement of his trade-mark, yet, by reason of his long-continued acquiescence and unreasonable delay in seeking relief, he was not entitled to an account for profits. This principle was applied in *New York Grape Sugar Co.* v. *Buffalo Grape Sugar Co.*, 24 Fed. Rep. 604, to a suit for the infringement of letters patent. In *Harrison* v. *Taylor*, 11 Jur. (N. S.) 408, a delay of less than a year in bringing suit to enjoin infringement of a trade-mark was adjudged to be good ground for refusing a decree for an account of profits. Furthermore, relief of this nature has sometimes been denied by a court of equity simply on the ground that the infringement was without fraudulent intent. *McLean* v. *Fleming, supra; Moet* v. *Couston*, 33 Beav. 578; *Edelsten* v. *Edelsten*, 1 De Gex, J. & S. 185; *Merriam* v. *Smith*, 11 Fed. Rep. 588.

Now, in the present case, we have not only inexcusable laches on the part of the plaintiffs, but also the element of entire good faith on the part of the defendants. The plaintiffs' claim, then, to profits is altogether destitute of equity.

It appears that as early as 1879 Keller began to grant licenses, and there is satisfactory evidence showing his fixed license fee to be $1,000 for the use of his apparatus on one dredging-boat. Substantial justice, then, will be done by decreeing compensation to the plaintiffs on the basis of such license fee, and, in adopting this

measure of relief, we act in the spirit of the rule indicated in *Burdell* v. *Denig*, 92 U. S. 716.

And now, July 2, 1886, the plaintiffs' exception to the master's report is overruled, and the defendants' first and second exceptions thereto are sustained; and it is ordered that a decree be drawn in favor of the plaintiffs for $1,000, with costs of suit.