RICHARDSON v. D. M. OSBORNE & CO.

(Circuit Court, N. D. New York. July 7, 1897.)

No. 6,156.

PATENTS—SUIT FOR INFRINGEMENT—LACHES—EXCUSE FOR DELAY.

A patentee, who has quietly acquiesced in the open and notorious infringement of his patent for 16 years, cannot maintain an action for such infringement. It is no excuse for such delay that his co-owners of the patent would not agree to prosecute infringements.

William H. Chapman and Thaddeus B. Wakeman, for complainant.
Frederick P. Fish, James J. Storrow, and A. D. Salinger, for defendant.

COXE, District Judge. This is an equity action for the infringement of letters patent, No. 181,664, granted to Thaddeus Fowler, August 29, 1876, for an improvement in grain-bundling machines. One of the defenses is laches. The patent expired August 29, 1893. This action was commenced June 10, 1893, about two months and a half before the patent expired. As no injunction can issue the only relief which can, in any event, be granted is an accounting. The patent has never been operated. Only one experimental machine was made; it collapsed on its first trial and disappeared from view. No machine for actual use in the field was ever built, no license was ever granted, no royalty was ever paid. The patent was never of any practical use. It was infringed almost from its issue. The complainant concedes that it was infringed for 13 or 14 years and the proof indicates a considerably longer period. This infringement was general, open and notorious. The complainant testifies that "practically all the binders and harvesters made in the United States during the last twelve or fourteen years contain the invention of the Fowler patent." And yet knowing, as he must have known, that hundreds of farmers all over the land were using his invention he calmly folded his hands and permitted them to plunder his patent without a word of protest. He says that he notified the defendants, in the latter part of 1883, that they were infringing and he also says that he commenced an action at law in 1891 against a Minnesota corporation, which suit was compromised. This was the only suit ever brought and this, it will be observed, was when the patent had only two years more of life. No excuse, which the law can recognize, is offered for this unprecedented supineness and neglect. Financial ability to pursue infringers is admitted. The only excuse offered is that the complainant's brothers who, prior to 1890, owned the patent jointly with him had no faith in its validity and declined to spend their money in an enterprise which they thought must only lead to

disaster.    Cui bono?    Can it be possible that the public loses its right
to use the machine, which otherwise would be indefeasible, because
of secret disputes among the owners of the patent?    To the world
at large, to the farmers and dealers, the conduct of the complainant
and his brothers was a plain notice that the patent was not worth
defending and might be infringed with impunity.    The public acted
upon this tacit permission.    After 14 years of quiet and unmolested
enjoyment it is too late to ask a user to turn over his entire profits
upon the theory that it was impossible to proceed sooner because of
disagreements between the owners of which the user had no notice.
Besides, the excuse cannot be maintained as matter of law.    The
complainant could have proceeded without the co-operation of the
other owners.    If they refused to be complainants he could have made
them defendants.    Onderdonk v. Fanning, 4 Fed. 148.    If the opposi-
tion of his brothers was the sole cause of his inaction it may be per-
tinent to inquire why he did not proceed promptly when, in October,
1890, he acquired the entire interest?    With the exception of the
unique and nebulous litigation in the Northwest he remained passive
for three years more.

So far as the defendant is concerned the complainant gave no in-
timation that at last he was ready for the conflict.    His lethargic
slumber was apparently unbroken by even a dream of prospective
profits.    In 1883 the notice was given.    In 1893 the suit was com-
menced.    The defendant was, therefore, permitted to infringe with-
out a word of protest for at least ten years.    But the defendant was
justified, when it received the notice in 1883, in taking into consid-
eration the fact that even at that time the owners of the patent had
acquiesced for years in its infringement.    There is, of course, no force
in the suggestion that the complainant is not responsible for laches
occurring before he became the sole owner.    If this were otherwise
a party could revive a dead cause of action by assignment.    Equity
will not permit the mere act of transfer to convert a stale claim into
a fresh one.

The reason advanced for neglecting to operate under the patent
is unfounded in fact and inadequate in law.    It is said that Deer-
ing & Co., to whom the experimental machine was sent in 1876, were
under obligation to exploit it and introduce it to the public.    As-
suming that such an agreement is proved,—and it is not,—the com-
plainant had no right to rely upon it after it became apparent that
Deering & Co. recognized no such obligation and were doing nothing
to push the patent.    It might have been an excuse for a few months
but not for 16 years.

It is unnecessary to pursue the subject further.    Suffice it to say
that the record presents one of the most flagrant cases of laches with
which the court is familiar.    If this action can be maintained a pat-
entee has simply to pocket his patent, wait until the field is full of
infringers and begin his suit two months before the patent expires.
When charged with laches he has simply to assert that until he com-
menced his suit he thought the chances of success dubious and, there-
fore, did not call the infringers to account.    It is plain that the pub-
lic rights cannot depend upon considerations so shadowy, unilateral

and inequitable. Unless the court is prepared to say that the defense of laches will no longer be enforced in a patent suit it must find for the defendant on this issue. The law of laches is so well understood that it is unnecessary to restate it. It is thought that no case can be found excusing such delay as this record discloses. See McLean v. Fleming, 96 U. S. 245; Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143; Hardt v. Heidweyer, 152 U. S. 547, 14 Sup. Ct. 671; Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418; Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78; Abraham v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894; Piatt v. Vattier, 9 Pet. 405; Manufacturing Co. v. Williams, 15 C. C. A. 520, 68 Fed. 489; Owen v. Ladd, 76 Fed. 992; Wyeth v. Stone, 1 Story, 273, Fed. Cas. No. 18,107; Fosdick v. Machine Shop, 58 Fed. 817; Keller v. Stolzenbach, 28 Fed. 81; Prince's Metallic Paint Co. v. Prince Manuf'g Co., 6 C. C. A. 647, 57 Fed. 938; New York Grape-Sugar Co. v. Buffalo Grape-Sugar Co., 24 Fed. 604; McLaughlin v. Railway Co., 21 Fed. 574. It follows that the bill must be dismissed.