### ADRIANCE, PLATT & CO. v. NATIONAL HARROW CO.

#### (Circuit Court, S. D. New York. November 25, 1901.)

INJUNCTION—GROUNDS — THREATENING SUITS FOR INFRINGEMENT OF PATENTS.
The owner of patents cannot be enjoined from issuing letters or circulars to the trade asserting the validity of his patents, and that they are infringed by goods manufactured and sold by another, and giving notice that infringers will be sued, where such circulars contain no false statement of fact. In so giving notice of his claims in good faith, the owner of a patent is acting within his rights, and a court of equity can take cognizance of the matter only to prevent fraud and falsehood.

In Equity. Suit for injunction. On final hearing.

This is an action to restrain the publication of circulars and letters stating that spring-tooth harrows manufactured by the complainant infringe certain patents owned by the defendant. The case was before the court on demurrer to the bill and the demurrer was overruled for the reason that under the sweeping allegations of the bill a case might be proved showing that the circulars were false, fraudulent and malicious and were published with intent to injure and destroy the complainant's business. 98 Fed. 118. The circulars and all the publications complained of are now before the court so that nothing is left to conjecture. The circular, dated November 14, 1898, is the one chiefly discussed and will serve as a sample of all the others. It is as follows:

"Office of National Harrow Co.

"Auburn, N. Y., Nov. 14, 1898.

"To Dealers in Spring-Tooth Harrows: Your attention is called to a decree of the United States court, printed on the opposite side of this sheet. This litigation came to an end about the first of last February. The letters patent, No. 329,371, dated October 27, 1885, and known as the 'Davis Patent,' owned by this company, were declared to be good and valid. The first claim of this patent reads as follows: 'Claim—A harrow composed of separate and distinct frames detachably connected, and each provided with a set of teeth and supported independently of the other by rollers connected with said frame, substantially as set forth and shown.' [Here appears a cut of a spring-tooth harrow.] The Buckeye, manufactured by Adriance, Platt & Co., Poughkeepsie, N. Y., and claimed by us to be made in infringement of our patents. Those who manufacture or sell spring-tooth harrows (embodying our patents) not made by our licensees are infringers and will be held ac-

countable to us for damages. Several of our patents must be used in manufacturing a modern, up to date spring-tooth harrow, and dealers are cautioned against buying harrows embodying the claim quoted and, to be on the safe side, are cautioned not to buy any spring-tooth harrows not bearing the license label of this company, for we have yet to find the harrow of recent and modern construction that does not embody one or more of our patents. Dealers have ample opportunity to buy licensed goods from our licensees who make up to date harrows, and in order that you may not be misled, we give you herewith their names: [Here appear the names of the licensees, nine in all.] We regret that we are obliged to hold dealers responsible, but this cannot be avoided, as in many cases the manufacturer would not be financially able to settle our claims. Dealers are too ready to believe the stories of the representatives of infringing manufacturers and accept their various guaranties, but when it comes to the time of carrying out the promises, the dealer foots the bill. Let infringing harrows alone, or do not complain when we bring suit against you. We give you every opportunity to know where you can buy licensed goods and avoid liability for infringement of patents. We cannot aid you further in these matters. Obtain a bond of indemnity from the manufacturer with sureties such as your own attorney will accept, if you continue to handle infringing goods. We will furnish form of bond upon request. To aid us in protecting those who are desirous of selling nothing but the licensed article, we would like the names of any dealer or dealers that you may know of who are selling infringing harrows.

"Very truly yours,                            National Harrow Co."

S. D. Bentley, for complainant.
E. H. Risley, for defendant.

COXE, District Judge (after stating the facts). Upon the decision of the demurrer the court plainly intimated that there could be no recovery should it appear that the defendant was the owner of patents relating to spring-tooth harrows and that the circulars complained of asserted simply the validity of these patents, that they were infringed by the complainant's harrows and that infringers would be prosecuted. The circulars in evidence show nothing more. There is not a false statement of fact to be found in the circular quoted above or in any of the other circulars or letters in evidence. Necessarily the claim of infringement is based upon opinion, but it is an opinion which a perfectly sincere and honest man might entertain. Certainly it cannot be said that the opinion was without justification, malicious and false. Where the owner of a patent honestly believes that his patent is being infringed not only has he a right to say so, but unless he does say so he is in danger of having his rights forfeited through laches.

Section 4900 of the Revised Statutes, after providing that the word "patented" must be marked on all patented articles, continues:

"And in any suit for infringement, by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement, and continued, after such notice, to make, use, or vend the article so patented."

But the theory of the bill, carried to its logical conclusion, enjoins the owner of a patent from doing what the statute commands him to do. Which way is the perplexed patentee to turn? If he notifies supposed infringers that he intends to enforce his rights he is punished for contempt in violating the injunction and if he fails to notify them he is turned out of court with the information

that he has "slept upon his rights." Cases are constantly occurring where equity refuses all redress to a patentee because he has permitted his patent to be plundered without a word of protest. Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049; Fosdick v. Machine Shop (C. C.) 58 Fed. 817; Richardson v. D. M. Osborne & Co. (C. C.) 82 Fed. 95. It would seem that there is a perfectly safe rule for the guidance of the court in these causes. So long as the patentee keeps within the domain of truth there can be no libel and there should be no interference by injunction. If equity is to take cognizance of this subject at all it should only do so to prevent fraud and falsehood. Here it is on safe ground, but when it assumes the role of censor and undertakes to edit the circulars of trade it becomes a meddlesome interloper creating infinitely more evil than it can ever hope to cure.

The motions to strike out testimony are denied. As often pointed out, these motions are inconsequential and result in nothing whether granted or denied. Every record contains a percentage, and oftentimes a large percentage, of irrelevant and incompetent testimony. The only effectual remedy is to compel the party responsible for its presence on the record to pay the expenses incurred in placing it there.

The bill is dismissed.