## MUMFORD et al. v. ECUADOR DEVELOPMENT CO. et al.

(Circuit Court, S. D. New York. November 25, 1901.)

**1. CORPORATIONS—RIGHTS OF MINORITY STOCKHOLDERS.**

Although the majority stockholders of a corporation may lawfully make a contract with the company, such contract will be scrutinized with much greater care than if made with a third party; and unless it appears that it was made honestly, and for an adequate consideration, a court of equity will interpose to prevent it from being used oppressively, and in violation of the rights of the minority stockholders, no matter in what form or by what subterfuge such rights are invaded.

**2. SAME—SUIT BY MINORITY STOCKHOLDERS—SUFFICIENCY OF BILL.**

A bill filed by minority stockholders, which alleges, in substance, that the majority have, by electing directors who act solely in their interests, caused contracts to be entered into by the corporation transferring all of its property to a second corporation, of which they are owners, for a wholly inadequate consideration, states a cause of action which entitles complainants to relief.

**3. SAME.**

A bill filed by minority stockholders to set aside a contract made by the corporation as having been obtained by the majority stockholders in their own interest and in fraud of the rights of complainants, need not set out such contract in haec verba, especially where it is alleged to be in the possession of the defendant corporation.

**4. SAME—PARTIES.**

In a suit by minority stockholders against the corporation and a second corporation alleged to be owned by the majority stockholders to set aside a contract between them as in fraud of the rights of complainants, a person alleged merely to have executed such contract on behalf of the second corporation, and to have represented it as agent to vote its stock in the first corporation in favor of the contract, cannot be joined as a

party defendant, since he is not shown to have any interest in the transaction, or to have taken any part therein except as an agent for one of the defendant corporations.

In Equity. On demurrers to bill.

Justus P. Sheffield, for complainants.

Lawrence E. Sexton, for defendants Ecuadorian Ass'n, Limited, and W. Lyon Mackenzie.

Benoni Lockwood, Jr., for defendant Ecuador Development Co.

COXE, District Judge. This is an action commenced by the complainants, as minority shareholders of the Ecuador Development Company, to set aside as fraudulent a contract made between said company and the Ecuadorian Association, Limited, which was and is the majority shareholder of the said development company. By this contract, substantially, all of the property of the development company was transferred to the Ecuadorian Association. The bill is demurred to on the ground that it fails to state a cause of action and the defendant Mackenzie demurs also on the ground that he is improperly made a defendant.

The bill alleges as follows: That in the year 1897 a contract was entered into between Archer Harman and the republic of Ecuador whereby Harman and his associates agreed to build and equip a railroad between Guayaquil and Quito, Ecuador. That thereafter the Guayaquil & Quito Railway Company was organized under the laws of New Jersey and took over said contract and entered upon its performance. That in the latter part of 1897 the South American Railway Construction Company was organized for the purpose of building said railway and by agreement with the railway company the said construction company was to receive a large proportion of the bonds and preferred stock of the railway company as a consideration for building the road. That in September, 1899, both said companies were without funds, the construction company was unable to carry out its agreements with the railway company and the concession granted to said company by the republic of Ecuador was in danger of lapsing. That the defendant the Ecuador Development Company was organized in September, 1898, for the purpose of taking over the rights of the construction company, and thereafter the entire property of said company was transferred to the development company, which latter company undertook the construction of said railway. That the number of directors provided by the charter of the development company was five, three being chosen by the common and two by the preferred stock, the former controlling the management of the company. That in January, 1899, the said Harman and one Norton conspired together to obtain a controlling interest in the stock of the development company, purchased large amounts of said stock and caused to be elected a board of directors controlled by them and subservient to their interests, Norton being elected president and Harman manager of said company. That the said Harman and Norton thereupon procured the said board of directors fraudulently to allot to them all of the remaining common stock in the treasury of the

said company, amounting to 200 shares of the par value of $20,000, which, with their previous purchases, gave them a majority interest and absolute control of said company. That the Ecuadorian Association is an English corporation and was organized in March, 1899, for the purpose of acquiring from Harman and Norton 500 shares of the stock of the development company and a large amount of bonds of the railway company, which they claimed to own, which said stock and bonds were actually transferred to the said association. That Harman and Norton, notwithstanding the said transfer, continued to own a controlling interest in the common stock of the development company and they agreed to sell to the association $250,000 of the bonds of the railway company at par for which the association was to issue to them £50,000 par value of the shares of the association. That the complainant was a director of the development company in January, 1900, and while he was acting in that capacity a contract was proposed giving certain valuable rights, privileges and mining interests belonging to the development company to the association for an inadequate consideration. That the complainant opposed this contract and procured a postponement of its consideration, but before it was again examined by the board of directors he was removed from office. That after his removal Harman and Norton, having control of the board of directors of the development company, procured a large number of other contracts to be entered into which transferred various rights and privileges to the said association without adequate consideration and in fraud of the rights of the stockholders of the development company. That in pursuance of a fraudulent design to transfer all of the valuable assets of the development company without adequate consideration and in fraud of the rights of the minority stockholders the said Harman and Norton, in the summer of 1900, transferred to the association their majority holdings of the common stock of the development company and the preferred stock held by them and took in exchange therefor stock of the association to an amount many times the par value of the stock so transferred. That in this manner the association has become the owner of 80 per cent. of the capital stock of the development company. That Harman and Norton were and are directors of the association and of the development company, the said Norton resigning as president of the latter and causing a confidential agent of his to be elected in his place. That after the removal of the complainant from the board neither Norton nor any of the officers of the development company, who were under his control, allowed the minority stockholders any information regarding the assets of the development company, though frequently requested so to do. That Harman and Norton, holding a majority of stock in the development company, prevented the annual meeting, which should have been held in June, from being held until September 15, 1900. That at an adjourned meeting held on that day the defendant Mackenzie appeared as proxy for the Ecuadorian Association and in its name voted a majority of the stock of the development company. That at said meeting no statement of the business, assets or finances

of the development company was made, but its president presented, as part of his report, a contract, bearing date September 6, 1900, between said company and the Ecuadorian Association, which was executed by the said Mackenzie on behalf of the latter corporation. The contract was voluminous, reciting a large number of previous contracts between the said parties, and, in general, purported to transfer to the said association all the property of the said development company of every name and nature. That the only consideration for this transfer was the assumption of certain obligations of the development company and an agreement to pay the said company, when the said railway should be completed, one-tenth of the net profits which should appear to have accrued from the completion of the contract with the government of Ecuador. That the contract was adopted, Mackenzie casting the vote of the association in its favor, the minority stockholders, including representatives of the complainants, voting against it and strenuously opposing its ratification. That pursuant to the terms of this contract all the property of the said company, including $17,000 cash, was turned over to the said Ecuadorian Association. That at the date of said meeting—September 15, 1900—the development company was entirely solvent, owning assets far in excess of its liabilities. That its contracts to build the Guayaquil & Quito Railway were of great value and it was the owner of between one and two million dollars of 6 per cent. first mortgage bonds of the said railway company, which were guarantied by the government of Ecuador and were worth about par, and although certain sums had been loaned upon the security of said bonds other loans for large amounts could have been obtained. That the entire cost of completing the said railway had been estimated not to exceed $6,000,000 and for this work the said development company was to receive in stock and bonds of the railway company the sum of $20,782,000, leaving a profit of nearly $15,000,000, estimating the stock and bonds at par, and a profit of over $6,000,000 on the bond issue alone.

The bill charges that the contract of September 6, 1900, and the various contracts which preceded it were and are fraudulent and void as against the shareholders of the Ecuador Development Company and that they were made pursuant to a conspiracy to defraud the minority shareholders and to benefit the said Harman and Norton. That to this end and in furtherance of this scheme the property of the development company was squandered and it was induced to assume improvident, reckless, and unnecessary obligations for the purpose of depressing the value of its stock and giving color to the assertion that it was insolvent in order that its entire property might be transferred to the Ecuadorian Association. That Harman and Norton, through their creatures, absolutely controlled the affairs and dictated the policy of the development company, and, pursuant to their scheme to secure all its property for their own use and to defraud the minority shareholders, refused to give any information regarding the affairs of the said company and kept the minority in total ignorance of its financial condition until the transfer to the Ecuadorian Association was accomplished. That no de-

mand has been made upon the development company to bring this suit for the reason that it is in the absolute control of the defendant, the Ecuadorian Association.

The relief demanded is: First. That a discovery be had. Second. That the contract of September 6, 1900, and all previous contracts be set aside as void. Third. That an injunction issue restraining the defendants from transferring said contracts. Fourth. That an accounting be ordered.

The foregoing is a synopsis of the salient features of the bill. The bill is unnecessarily prolix and abounds in needless vituperation. Were the verbosity squeezed out of the bill by passing it through a mental condenser it would, undoubtedly, be a more symmetrical pleading. However, the bill is now before the court on demurrer and the question, therefore, is not whether the allegations of the bill could be more concisely stated, but whether the bill states a cause of action; if it does, it matters not what else it states. The bill, condensed to a few paragraphs, alleges as follows: First. The existence of the Ecuador Development Company, a solvent and flourishing corporation, holding a contract from which not less than $6,000,000 will probably be realized. Second. A fraudulent conspiracy on the part of the majority stockholders of the development company to secure for their own benefit and at the expense of the minority stockholders all of the assets and potentialities of the company. Third. The formation of the Ecuadorian Association, Limited, which is in reality only the corporate name of the majority stockholders, and the transfer to it of all the assets of the development company for an inadequate consideration. Fourth. The various proceedings by which the transfer of the property from all the stockholders to the majority stockholders was accomplished, namely, the packing by the conspirators of the board of directors with their dummies; the partial wrecking of the company to give a semblance of truth to the charge of insolvency; the arbitrary refusal to give any information to the minority stockholders; the absolute control of both corporations by the conspirators through their creatures, and the secret contract and transfer to the Scotch corporation.

If the complainants are able to prove all that they have alleged it will entitle them to relief within the rule of the following authorities, which are selected from many as approximating most closely the facts in the case at bar: Mason v. Mining Co., 133 U. S. 50, 10 Sup. Ct. 224, 33 L. Ed. 524; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Ervin v. Navigation Co. (C. C.) 20 Fed. 577; Meeker v. Iron Co. (C. C.) 17 Fed. 48; De Neufville v. Railroad Co., 26 C. C. A. 306, 81 Fed. 10. The rule deducible from all these cases is that although a majority may lawfully make a contract with the company such contract will be scrutinized with much greater care than if made with a third party, and unless it appears that it was made honestly and for an adequate consideration a court of equity will interpose to prevent such contract from being used oppressively and in violation of the rights of the minority. It matters not in what form these rights are invaded; it is the business of equity to pene-

trate through subterfuges and discover the actual transaction stripped of all disguises. If then it shall appear, no matter what may be the machinery employed, that the majority have sold the corporate property to themselves for a wholly inadequate consideration a court of equity will grant relief to the minority who have thus been despoiled of their property. In short, if the complainants are able to show that Harman, Norton and their associates have transferred to themselves under the name of the Ecuadorian Association, Limited, a contract worth $6,000,000, leaving for the other stockholders nothing but a right to share, sometime in the future, in one-tenth of the net profits to be ascertained from books kept by Harman and Norton, they, the complainants, will have established a cause of action entitling them to a decree.

The theory upon which the courts interfere in such cases is tersely expressed by Sir William M. James, in Menier v. Telegraph Works, 9 Ch. App. 350. He says:

"The minority of the shareholders say in effect that the majority have divided the assets of the company, more or less, between themselves, to the exclusion of the minority. I think it would be a shocking thing if that could be done, because if so, the majority might divide the whole assets of the company, and pass a resolution that everything must be given to them, and that the minority should have nothing to do with it. Assuming the case to be as alleged by the bill, then the majority have put something into their pockets at the expense of the minority. If so, it appears to me that the minority have a right to have their share of the benefits ascertained for them in the best way in which the court can do it, and given to them."

It is argued for the defendants that if the contract of September 6, 1900, were set out in full it would show ample consideration and would, in short, demonstrate the falsity of the allegations of the bill regarding it. It is said that until profert is made of the contract the "court ought not to permit complainants to put defendants or any of them to the trouble, expense and annoyance of filing an answer herein." It should be remembered that the cause is before the court on demurrer and bill. The bill must be judged as it is, not as it might be. The action is not founded on the contract of September 6th; it is an action to set that contract aside because it was obtained in fraud of complainants' rights. It is not necessary that the contract should be pleaded in hæc verba. It often happens, in these circumstances, that there is a vast and fatal discrepancy between the pleading and the proof. Documents which are painted black in the pleading often turn out to be white and innocent when finally offered to the court for inspection. And yet the court on demurrer cannot pronounce the bill bad even though it is probable that the papers referred to therein if produced will make it plain that the action cannot be maintained. Adriance, Platt & Co. v. National Harrow Co. (C. C.) 98 Fed. 118. In this case the demurrer to the bill was overruled, but the bill was dismissed on final hearing for the reason that the circulars, which were alleged to be false and malicious, were found when produced to contain nothing but truth. Id. 111 Fed. 637. Assuming the case at bar to be a case where the contract should be pleaded a sufficient excuse for not pleading it is alleged in the bill.

As to the defendant Mackenzie the demurrer must be allowed. The bill states nothing regarding him, except that he executed the contract of September 6th on behalf of the Ecuadorian Association, and as agent and proxy for said association appeared at the meeting of September 15, 1900, offered a resolution advocating the adoption of the contract and voted the shares of the association in favor of the said resolution. The association which profits by the contract is a party and a decree against it will involve its officers and agents sufficiently, at least, to render the decree effectual. Colonial & U. S. Mortg. Co. v. Hutchinson Mortg. Co. (C. C.) 44 Fed. 219. Mackenzie was merely a messenger for the Ecuadorian Association to perform a single act from which he personally received no benefit which was a corresponding injury to the complainants. If the bill had alleged that the property of the development company had been delivered to Mackenzie and that he still holds the same a different proposition would be presented. Berwind v. Van Horne (C. C.) 104 Fed. 581. The complainants have argued in the brief submitted that Harman and Norton, the active instigators and participators in the alleged frauds, are not necessary parties. The brief says:

"They are not alleged to be the owners or in possession of the property, for the return of which the action is brought; and the controversy between the present parties can be completely decided without their presence or intervention and without any decree being entered which can affect them in any way except indirectly as stockholders of the Ecuadorian Association."

Surely, no reason can be suggested for failing to sue them which does not apply with infinitely greater force to Mackenzie. The bill contains no allegation implicating him in a conspiracy to defraud or charging him with knowledge of the existence of such a scheme. Any officer of the court receiving a similar commission to appear at a stockholders' meeting and vote the stock of his principal in favor of a certain specified resolution might accept the service and act as directed with perfect innocence and good faith. No authority has been cited or found by the court where a bill of this character has been maintained against one who was neither a director nor stockholder, but was merely an attorney who did no act, except to vote the stock as he was directed to do by his client.

The demurrer filed by the defendant Mackenzie is allowed, with costs.

The demurrers of the other defendants are overruled, with leave to the defendants to answer the bill within 30 days upon paying the costs of the demurrers.