UNITED STATES LINES, Inc., et al. v. UNITED STATES LINES CO. et al.

CHAPMAN v. INTERNATIONAL MERCANTILE MARINE CO. et al.

No. 107.

Circuit Court of Appeals, Second Circuit.

April 4, 1938.

David B. Landis, of New York City, for appellant Theodore S. Chapman.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Cletus Keating, Roger Siddall, and Donald D. Geary, all of New York City, of counsel), for defendant-appellee International Mercantile Marine Co.

Cravath, deGersdorff, Swaine & Wood, of New York City (William D. Whitney and G. W. Haight, both of New York City, of counsel), for defendants Tide Water Oil Co., and William F. Humphrey.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant United States Lines Company has been engaged since on or about December 8, 1931, in the business of owning and operating a transatlantic line of steamers which had been operated prior to that date by the complainant United States Lines, Inc. In February, 1934, United States Lines, Inc., brought a derivative stockholders' suit against United States Lines Company to assert claims that the latter corporation is said to have had against International Mercantile Marine Company, the American Lines Company, and the Roosevelt Steamship Company, Inc. (corporations which International controlled through stock ownership), against the Tide Water Oil Company, and also against various officers and directors of the corporate defendants other than Tide Water Oil Company. The derivative suit was based upon the ownership by United States Lines, Inc., of 600,000 shares of convertible junior preferred stock of United States Lines Company, which was the sole asset of United States Lines, Inc.

The complainant in the derivative suit by United States Lines, Inc., alleged the right of the United States Lines Company to recover several millions of dollars from the International Mercantile Marine Company and the corporations which it controlled, as well as from the individual defendants. The interests which obtained control of the United States Lines, Inc., made an attempt (hereinafter described) to have the derivative suit abandoned. In opposition to this attempt one of the counsel who had filed the bill and had been prosecuting the suit submitted an affidavit setting forth the nature and extent of the claims of the United States Lines Company against the other defendants herein. He stated that by means of the control of International Mercantile Marine Company over United States Lines Company (1) the latter had improperly agreed to pay the Roosevelt Steamship Company, Inc., an excessive management commission of 7½ per cent., amounting to $696,429.78 for the year 1932 and to larger sums for each of the succeeding years; (2) that the United States Lines Company had entered into a contract with the Tide Water Oil Company to purchase quantities of oil from the latter at a cost of $75,000 more per year (amounting altogether to $600,000) than the price offered for similar oil by the Gulf Refining Company and had paid such excessive amounts to Tide Water; (3) that the United States Lines Company had made payments aggregating $300,000 for services not properly chargeable to it; (4) that excessive depreciation had been charged against the property of United States Lines Company to the amount of $800,000 per annum, thus impairing the dividend possibilities of the convertible junior preferred stock owned by United States Lines, Inc. The complaint prayed that the various defendants connected with the above payments and charges should account for the same and that a dividend of 37½ cents should be decreed to the holder of the junior preferred stock. Answers were interposed by the defendants denying all liability.

Inasmuch as the first preferred stock of the United States Lines Company already issued amounts to 305,000 shares, is cumulative as to dividends, and is entitled to payment annually of 70 cents per share before any dividend payments can be made to the junior preferred or to the common stock, a recovery from the defendants amounting to $213,500 per year would be necessary before the 600,000 shares of junior preferred stock held by the United States Lines, Inc., would yield any return. The apparent indebtedness of United States Lines Company to the government of over $3,000,000 renders the value of its junior preferred stock and of the complainant's rights highly speculative.

The stock of the United States Lines, Inc., consists of 600,000 shares of preference stock and 1,000,000 shares of common stock. The company was organized by P. W. Chapman & Co., Inc., investment bankers, to take over from the United States government at $16,000,000 the vessels and business afterwards operated by United States Lines Company. A substantial amount of the preference stock of United States Lines, Inc., was sold to the public at prices around $17.50 per share, but by 1931 this stock had declined to approximately 50 cents per share. P. W. Chapman & Co., Inc., retained 915,000 shares of the common stock and 85,000 shares were in the hands of one Sheedy. It also retained 330,460 shares of the preference stock. In or about 1931, it pledged to secure a loan from the Chemical Bank & Trust Company of about $3,500,000 its entire holdings in United States Lines, Inc., that is to say, 330,460 shares of preference stock and 915,000 shares of common stock, together with other securities. Thereafter P. W. Chapman & Co., Inc., defaulted on the obligation to the bank. Early in 1935 the bank foreclosed its lien, bought in the 330,462 shares of preference and the 915,000 shares of common stock of United States Lines, Inc., and thereafter transferred them to defendant International Mercantile Marine Company. The transfer took place in or about February, 1935, and thereby International acquired a majority of the stock of United States Lines, Inc., and elected as four out of five of its directors P. A. S. Franklin, John M. Franklin, Basil Harris, and Kermit Roosevelt, who were also directors of the defendant International Mercantile Marine Company, American Lines Company, and Roosevelt Steamship Company, and likewise directors of United States Lines Company.

In 1931 United States Lines, Inc., had become unable to perform its contract to make payments to the United States for the ships and business it had purchased from the latter. Accordingly, in December, 1931, it sold its interest therein to the United States Lines Company which in the meantime had been organized to take them over. The purchase by United States Lines Company was made subject to the liabilities of United States Lines, Inc., which the former corporation assumed. The consideration that the United States Lines Company gave to United States Lines, Inc., for the purchase was 600,000 shares of junior preferred stock of United States Lines Company. These 600,000 shares went into the treasury of the United States Lines, Inc., and became, as we have already stated, its sole asset. A majority of the other classes of stock of the United States Lines Company came within the control of the International Mercantile Marine Company, being owned by it or by American Lines Company which International controlled.

It is evident from the foregoing that the International Mercantile Marine Company in the year 1935 became in control of United States Lines, Inc., through the transfer of the latter's stock by the Chemical Bank, and had prior to that time come into control of United States Lines Company.

On October 5, 1935, the board of directors of United States Lines, Inc., instructed its attorneys in the derivative stockholders' suit to take no action and to incur no further expense in connection with the prosecution of the suit until receiving further instructions. J. V. Bendus, one of the directors of United States Lines, Inc., who was not a defendant in the suit or a director of any of the corporate defendants sued therein, but a holder of preference stock of United States Lines, Inc., notified the attorneys to disregard the instructions of its board of directors and to proceed vigorously with the prosecution of the suit. At about the same time the petitioner, Theodore S. Chapman, a brother of P. W. Chapman and an owner of 2,000 shares of preference stock of United States Lines, Inc. filed a petition, setting forth the attempt of those in control of the latter company to prevent the prosecution of the suit against them and their corporations and praying that he might be authorized to prosecute the suit at his own expense in the name of United

States Lines, Inc., and that its directors should be enjoined from interfering with such prosecution and for other and further relief. Upon the petition and the affidavits submitted in support of and in opposition to the same, Judge Knox denied the application with leave to renew.

On June 12, 1936, Theodore S. Chapman renewed his application for leave to continue the derivative suit of United States Lines, Inc. The defendants opposed his petition by showing that on March 10, 1936, the stockholders of United States Lines, Inc., had held an annual meeting at which Mr. Bendus was appointed chairman of a committee to examine and report to the stockholders at an adjourned meeting regarding the disposition of the derivative suit. He was, by resolution, authorized to appoint two associates as members of such committee from among the minority preference stockholders who were not interested as defendants in the suit. The committee thus constituted consisted of three disinterested preference stockholders. After the investigation of the Bendus committee, and in conformity with its recommendation, the stockholders voted at an adjourned meeting of the corporation held on June 5, 1936, that the derivative suit should be discontinued and that, upon such discontinuance, the United States Lines, Inc., should give to each of the holders of the 600,000 shares of preference stock of that company the opportunity to exchange their preference stock, share for share, with an equal number of shares of the junior preferred stock of United States Lines Company; that such exchange should be without expense to the stockholders (other than International Mercantile Marine Company) of United States Lines, Inc., for state and federal transfer taxes, or for corporate fees, counsel fees, and costs of notification to the stockholders, such expense to be borne by one or more of the defendants in the derivative suit. The expenses for corporate fees and counsel fees were stated by appellees to amount to about $40,000. The further expenses connected with the proposed exchange of stock were estimated by them at some $24,000 more.

The second application of Theodore S. Chapman for leave to prosecute the derivative suit at his own expense and to enjoin discontinuance was denied by Judge Bondy on October 5, 1936, who on April 8, 1937, made an order discontinuing the suit.

The vote of the stockholders' meeting which approved the settlement of the derivative suit recommended by the Bendus committee was as follows:

Vote for the settlement: 915,000 shares of the common stock, of which the total issue was 1,000,000 shares; 347,586 shares of the preference stock, of which the total issue was 600,000 shares.

Vote against the settlement: 3,550 shares of the preference stock.

Theodore S. Chapman contends that the votes upon the 915,000 shares of common and the 330,442 shares of preference stock of United States Lines, Inc., owned by International Mercantile Marine Company, the votes upon the 4,571 shares of preference owned by United States Lines Company, upon the 1,000 shares of preference owned by P. A. S. Franklin, upon the 3,500 shares of preference owned by Cletus Keating, upon the 3,460 shares of preference owned by or represented by A. P. Palmer, the secretary of International as proxy, and upon the 25 shares of preference owned by R. M. Hicks, the treasurer of International, ought not to be counted in determining whether the report of the Bendus committee was properly adopted for the reason that they were within the control of International Mercantile Marine Company against which the suit was brought, or in any event belonged to persons closely connected with it or its affiliates. But, if the votes of preference stock which are challenged be disregarded, nevertheless those of owners of that stock who were in no way connected with the defendants against whom charges were made in the suit would stand 4,456 in favor of the settlement recommended by the disinterested committee and 3,550 only against it. On no theory can we see any objection to counting the votes of 1,670 shares cast for the settlement by members of the Bendus committee when tabulating the votes.

■ The justification for allowing a double derivative suit like the present to be maintained is that both the original corporation that is said to have suffered wrong and its shareholder corporation which had the right to bring a derivative suit were in the control of those charged with inflicting the corporate injury. No attempt was made to extinguish any claim which United States Lines Company had against the alleged wrongdoers but only to abate the derivative suit and to bar Theodore S. Chapman from prosecuting it even though he

152

offered to do so at his own expense. There is no way of estimating the value of the claims and no attempt has been made to settle them but only to settle the derivative suit by paying the debts of the United States Lines, Inc., estimated at $40,000 at most and by paying the expense of distributing the assets of the latter corporation; namely, 600,000 shares of junior preferred stock of United States Lines, Inc. The proposal of the defendants to pay the expenses of exchanging the preference stock of United States Lines, Inc., for the junior preferred shares of United States Lines Company would benefit neither corporation but only eliminate a holding company from the picture. There is no showing that the creditors of United States Lines, Inc., propose to seize its only asset on execution or that the 600,000 shares of junior preferred stock will have any value unless the assets of United States Lines Company can be augmented by some realization upon the claims against the defendants. While the suit which has been brought seems highly speculative, yet the claims asserted run into millions and we are not satisfied that the value of the consideration offered for the discontinuance is sufficient to justify the order of the court below, especially when the discontinuance would apparently still leave Chapman free to institute another derivative suit as soon as he became a stockholder of United States Lines Company. Inasmuch as there are charges, however unjust they may be, that the corporate defendants appropriated moneys which should inure to the benefit of United States Lines Company, we think Chapman ought to be given his day in court, provided he conducts the proceeding at his own expense and shall receive indemnity only from any recovery realized through the suit and only then to a reasonable amount. As we have said, no consideration was offered to the United States Lines Company for the abandonment of the suit and its claims have not been extinguished. Under the circumstances, to require the discontinuance of the derivative suit for a relatively small consideration, when the claims sought to be asserted through it are enormous, does not seem justifiable. The settlement recommended by the committee did not involve any consideration moving to the company wronged,

nor did their report indicate that they had investigated the claims for appropriation of assets arising out of the alleged overcharges and found them worthless or unsubstantial. The settlement accomplished little more than to block a proceeding by a persistent stockholder who sought to have claims of United States Lines Company against the defendants asserted when both it and United States Lines, Inc., were under their control.

We do not say that the stock owned by the defendants could not be voted in favor of the settlement, but hold that the settlement effected by a majority consisting mainly of the defendants who were in control of the corporation should not be sanctioned without clear proof that it was advantageous to the corporation and its stockholders. We are not satisfied that such proof has been furnished by the defendants. Heim v. Jobes, 8 Cir., 14 F.2d 29, 32; Geddes v. Anaconda Copper Mining Co., D.C., 197 F. 860, 865; Eagle Iron Co. v. Colyar, 5 Cir., 156 F. 954; Mumford v. Ecuador Development Co., C.C., 111 F. 639, 643.

The order of discontinuance should be reversed and vacated and the intervener Chapman should be authorized to prosecute the suit in the name of United States Lines, Inc., but at his own expense, with a right to reasonable indemnity out of any recoveries which may be realized by the United States Lines Company through the prosecution of the suit, and other stockholders of United States Lines, Inc., should have the right to apply to the District Court for leave to join Chapman in such prosecution provided they are willing to contribute. The District Court may dismiss the suit at any time if it is shown that Chapman is not prosecuting it diligently.

The appeals from the order of Judge Knox denying Chapman's right to prosecute with leave to renew, and from the order of Judge Bondy denying the motion to enjoin the discontinuance of the suit, are dismissed because the decisions are now moot. The appeals from the orders of Judge Bondy denying leave to prosecute and discontinuing the suit are reversed. The suit is remanded to the District Court, with directions to proceed therein in accordance with the views expressed in this opinion. The appellant is allowed costs of the appeal.