**WACHSMAN et al. v. TOBACCO PRODUCTS CORPORATION OF NEW JERSEY.**

No. 1288.

District Court, D. New Jersey.

Nov. 28, 1941

David Friedenberg, of Jersey City, N. J., for plaintiffs.

Milton, McNulty & Augelli, and John Milton, Jr., all of Jersey City, N. J., for defendant.

WALKER, District Judge.

The facts are:[1]

1. Plaintiffs are citizens and residents of the State of New York.

2. The defendant, Tobacco Products Corporation of New Jersey[2] is a corporation incorporated under the laws of the State of New Jersey.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

4. In 1931 directors of Tobacco Products Corporation of Virginia[3], a corporation existing under the laws of Virginia, proposed a reorganization which was consummated on or about February 11, 1932. Virginia pursuant to said plan of reorganization transferred a lease[4] it had to New Jersey and New Jersey paid therefore by issuing its 6½% debentures in the sum of $35,591,235, to the shareholders of Virginia, among whom was The United Stores Corporation[5]. This left $1,012,544.15[6] of alleged value for which debentures were not issued and for the $1,012,544.15, New Jersey issued all its capital stock to Tobacco Products Corporation of Delaware, a corporation existing under the laws of Delaware[7].

5. About the same time Virginia transferred to Tobacco Products its remaining assets in exchange for Tobacco Products assuming the liabilities of Virginia, Tobacco Products issued its shares of common stock to the stockholders of Virginia and Stores became the majority stockholder in Tobacco Products.

6. The cost of acquisition of the lease with the American Tobacco Company as reflected upon the books of New Jersey was $36,603,779.15, although the lease had been carried on the books of Virginia at $4,105,509.81.

7. When Virginia was dissolved no provision was made for the payment of income taxes to the United States Treasury should the lease New Jersey had with American Tobacco Company be commuted.

8. In January, 1935, said lease was commuted by American Tobacco Company and New Jersey received $462,744.15, less than the cost of said lease to it as reflected on its books.

9. On June 8, 1937, the Treasury Department levied and assessed a tax against New Jersey for the year 1935 in the sum of $4,967,890.40, claiming that the defendant had sustained a taxable net profit of $32,150,497.09, on the transfer and commutation of the lease. Subsequently the Treasury Department levied and took over $725,638.27 that New Jersey had on deposit.

10. The defendant Tobacco Products Corporation of New Jersey in September, 1939, filed a claim for refund against the United States claiming the lease had cost them $36,603,779.15, and less than that amount had been realized when the lease was commuted, therefore it did not make a net profit.

11. On October 27, 1939, Stores, as owner of the majority of the stock of Tobacco Products, asked for the appointment of a receiver for Tobacco Products and the Chancery Court of Delaware appointed one Elwyn Evans.

12. The chancellor of the State of Delaware made an order directing the receiver to cause the directors of New Jersey to adopt a resolution abandoning the tax refund claim of New Jersey.

13. The plaintiffs, who are stockholders of Tobacco Products, bring this action on behalf of themselves and other stockholders similarly situated[8]. They ask that the officers and directors of the defendant be enjoined from abandoning New Jersey's claim for refund. They ask also for the appointment of a receiver to prosecute the claim, alleging that the officers and directors of Stores are the same as the officers and directors of New Jersey and Tobacco Products. They contend the statute of limitations has run against Tobacco Products and the negotiations for settlement of the tax claim contemplate that the government keep the $725,638.27 it took from New Jersey and release Stores from transferee liability and release Tobacco Products from transferee liability, if any, all of which will be to the detriment of the stockholders of Tobacco Products.

---

1 Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

2 Hereinafter called New Jersey.

3 Hereinafter called Virginia.

4 The said lease was for a large number of brands of Tobacco Products and it was with the American Tobacco Company as lessee.

5 Hereinafter called Stores.

6 Alleged purchase price $36,603,779.15.

7 Hereinafter called Tobacco Products.

8 Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The matter comes before the court on defendant's motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[9]

### Discussion.

On or about September 3, 1939, Tobacco Products called a meeting to be held on October 17, 1939, for the purpose of adopting a resolution reading as follows:

"Resolved that a plan of liquidation for this corporation be and hereby is adopted pursuant to which this Corporation shall be dissolved, its affairs liquidated in dissolution proceedings in accordance with the laws of Delaware, its assets distributed to its stockholders in complete cancellation and redemption of all its stock, and pursuant to which plan the transfer of the property under the liquidation is to be completed as soon as practicable and in any event within a period prior to December 31, 1939." and

"Resolved that in the judgment of the Board of Directors of this Corporation, it is advisable and most for the benefit of Tobacco Products Corporation of Delaware that said Corporation should be dissolved."

The meeting was held, and said resolution adopted, but, instead of conducting a voluntary liquidation, the assets of Tobacco Products were transferred to the State of Delaware and on October 27, 1939, Stores instituted a suit in equity in the Court of Chancery in the State of Delaware as the owner of the majority of the capital stock of Tobacco Products.[10]

Tobacco Products appeared in said action and interposed an answer admitting the allegations of the bill. The court appointed one Elwyn Evans, receiver of the assets of Tobacco Products.

The statute by virtue of which the receiver was appointed [11] empowers said receiver to collect the debts and property due

---

[9] 28 U.S.C.A. following section 723c.

[10] The following allegations for the appointment of a receiver were made:

"(13) The defendant was incorporated in connection with the reorganization of Tobacco Products Corporation (a Virginia corporation) for the purpose of holding certain of the assets of said Tobacco Products Corporation (a Virginia corporation). The defendant has never engaged in any active business operations but has acted to preserve and, in an orderly manner liquidate, the assets received by it in the reorganization of Tobacco Products Corporation (Virginia). The present assets of defendant represent the proceeds of the liquidation of property received by the defendant from said Tobacco Products Corporation (Virginia).

"(14) Complainant is not aware of any unpaid creditors of the defendant or of any litigation pending which would result in liability against defendant.

"(15) Complainant believes, and so avers, that it would be in the best interests of the defendant corporation and its stockholders for this Honorable Court to appoint a Receiver in dissolution for the defendant pursuant to the provisions of Sections 43 of the General Corporation Law of Delaware. Complainant has such belief and makes said averment for the following, among other reasons:

"(a) The assets of defendant, as heretofore alleged, are located in Delaware, whereas the Directors and officers of defendant are not resident in Delaware but reside in or near New York, New York.

"(b) Inasmuch as the Directors of defendant, the dissolved corporation, are the same as the Directors of your complainant, the majority stockholder of defendant, liquidation by a receiver instead of by such Directors will prevent any possible question from arising as between the majority stockholder and the other stockholders. Your complainant has no knowledge of any such present or potential question, but liquidation by a receiver will make it necessary * even to consider whether any such question exists or might exist.

"(c) Since the assets of the defendant consist principally of cash, it is believed to be desirable that a partial distribution in liquidation be made to stockholders as soon as possible. It is believed that a receiver acting under the authority of and with the instructions of the Court may make such distribution more promptly than Directors would feel justified in doing."

[11] Section 43 of the Delaware Corporation Act, Rev.Code Del.1935, § 2075, provides:

"Dissolved Corporations; Receivers For; How Appointed; Powers:—When any corporation organized under this Chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any creditor or stockholder of such corporation, at any time, may either appoint the directors thereof trustees, or appoint one or more persons to be

---

* The word "necessary" in this line is apparently a misquotation, the words should have been "unnecessary".

and belonging to Tobacco Products; it gives him the right to prosecute and defend in the name of the corporation, or otherwise all suits necessary or proper for the purposes aforesaid.

All of the stock of New Jersey is owned by Tobacco Products and said stock passed to the receiver when he qualified. The trust required him to ascertain its value and to take all necessary steps to preserve and if possible, increase its worth.

On August 10, 1940, the receiver presented a petition to the Court of Chancery of Delaware and an order was made by the chancellor directing said receiver to cause the directors of New Jersey to adopt a resolution or resolutions, or such contract or arrangements as necessary, to abandon irrevocably the claims for refund it has filed with the United States Government to recover the $725,638.27, taken on December 7, 1937, by the Deputy Collector of the Fifth New Jersey District on account of the tax assessed against New Jersey on June 8, 1937. The order also directed that the officers of New Jersey carry out such resolution or resolutions or such contract or arrangements, provided any claim for federal income taxes against Tobacco Products, the said receiver, or any stockholder or distributee or transferee of Tobacco Products or of said receiver be abandoned, compromised or otherwise disposed of, to the end that no claim be asserted by the United States of America against New Jersey, Tobacco Products or the receiver or the assets in the hands of said receiver or against any stockholder, distributee or transferee of Tobacco Products or said receiver, and authorizing and empowering such other action or arrangements to be taken or entered into by Tobacco Products as in the receiver's judgment would be advisable for the purpose of settling and disposing of the claims for federal income taxes mentioned in said receiver's petition.

The plaintiffs are stockholders of Tobacco Products, they contend the refund claim of New Jersey is a valid and subsisting claim and no one can profit by New Jersey abandoning said refund claim except Stores, against whom transferee proceedings have been or can be brought for $4,-105,509.81, the difference between $725,638.-27, the amount taken from New Jersey, and $4,977,890.40, the assessment.

In order to enjoin New Jersey, its officers, directors, counsel and agents from complying with the action taken or to be taken in accordance with the said order of the Court of Chancery of Delaware, the plaintiffs bring this action to enjoin and restrain the officers, directors, counsel and agents of New Jersey from abandoning the claim for refund and for the appointment of a receiver for New Jersey and its assets. The receiver to prosecute said claim for refund and to take such other or further action as may be advisable.

■ "Ordinarily the question whether or not a corporation shall seek to enforce in the courts, a cause of action against a third party like other business questions is a matter of internal management and is left to the discretion of the directors in the absence of instructions by vote of stockholders. Courts interfere seldom to control such discretion intra vires the corporation, except where the directors * * * stand in a dual relation which prevents an unprejudiced exercise of judgment, and, as a rule, only after application has been made by the stockholders to the governing body, unless it appears that there was no opportunity for such application, and that application would be futile or that the delay involved would defeat recovery." [12]

■ The considerations which prompt the derivative suit are present when a stockholder of a holding company sues on behalf of the subsidiary company to enforce a right which the directors of both companies have refused to enforce or it is reasonable to believe they will not enforce. [13]

---

receivers, of and for such corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the company, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by such corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation; and the powers of such trustees or receivers may be continued as long as the Chancellor shall think necessary for the purposes aforesaid."

[12] Clark on Receivers, Vol. 2, Chap. XXV No. 738(2), page 1090 and cases cited.

[13] See: Remedies of Stockholder of Parent Corporation for Injuries to Subsidiaries, 50 Harvard Law Review 963; Holmes v. Camp, 1st Dept. 1917, 180

■ It is such a double derivative suit that the plaintiffs, stockholders of Tobacco Products, the owner of all the stock of New Jersey seek to have a receiver enforce for New Jersey. The uncontradicted allegations that the officers and directors of Tobacco Products and Stores were the same at the time Stores filed its bill in the Court of Chancery of Delaware, and the officers and directors of New Jersey and Stores are identical [14] and the verified statement that Stores is the only one that will profit if New Jersey abandons its claim for tax refund [15] excuse the plaintiffs from applying to the governing body of New Jersey to refrain from abandoning the claim for refund and to prosecute said claim. The request for action would have been futile. [16]

Assuming but not deciding that objections, if any, to the complaint because of indispensable parties could be answered or the objections met, the complaint would be allowed to stand and the motion of the defendant to dismiss it would be denied if the Court of Chancery of Delaware had not appointed a receiver for Tobacco Products, the corporation in which plaintiffs have the stock upon which they rely to bring a double derivative suit and if said court had not taken affirmative action by order directed specifically to the claim for the tax refund in question.

■ "It is the general rule that, where a corporation is in the hands of a receiver, a stockholder cannot sue without the sanction of the court appointing the receiver. And it is further the general rule that such stockholder cannot sue, even where the court has granted him permission to do so, where there is no order purporting to assign to him or to confer on him the right to enforce the claim vested in the receiver. The property of the corporation, which would include claims of action on behalf of the corporation is in the possession and custody of the court, held by the receiver as an officer of the court. In the suit by a stockholder in behalf of the corporation the real controversy is between the corporation and the person whose acts are complained of, and the suit is for the benefit, not of the individual, but of all the stockholders. Where the corporation is in the hands of a receiver, the right of action by the receiver to protect the interest of the corporation is exclusive." [17]

The plaintiffs do not quarrel with the general rule. They contend the action of the receiver in obtaining the order hereinbefore referred to amounts to a refusal on his part to press the claim for refund and therefore they are aggrieved and may sue. [18]

■ "The right of a stockholder to sue to enforce a cause of action in favor of the corporation arises only from failure of the managers of its affairs at the time to use their powers and to do their duty in respect thereto. If the ordinary powers and duties of directors have been suspended by a receivership, * * * the right of a stockholder to sue, as representing the corporation, depends, not upon the attitude of the managers of its affairs in the past, but upon the attitude of the managers at the time the right is asserted by the stockholder's bill * * *." [19]

The attitude of the manager of Tobacco Products at the time the plaintiffs filed their complaint is evidenced by the record. He applied to the court that appointed him, the court administering the estate through him as its officer for the benefit

App.Div. 409, 412, 167 N.Y.S. 840, 842; Druckerman v. Harbord, Aug. 27, 1940, 174 Misc. 1077, 22 N.Y.S.2d 595; U. S. Lines, Inc. v. United States Lines Co. et al., 2 Cir., 96 F.2d 148; Chapman v. International Mercantile Co. et al., 2 Cir., 96 F.2d 148.

[14] See: (a), (b) and (c) of Paragraph 15 of bill filed by Stores in Court of Chancery of Delaware as set forth in paragraph 18 of complaint herein and paragraphs 24 and 31 of complaint filed herein.

[15] Paragraph 29 of complaint and paragraph 30 of the affidavit of Alvin L. Wachsman filed herein.

[16] See: Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827. Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[17] Klein et al. v. Peter et al., 8 Cir., 284 F. 797, 799, 29 A.L.R. 1497; Klein et al. v. Peter et al., 9 Cir., 286 F. 362; Reagan v. Midland Packing Co., 8 Cir., 8 F.2d 954. See: Hart et al. v. Wiltsee et al., 1 Cir., 19 F.2d 903, and Kelly v. Dolan, D.C., 218 F. 966, affirmed, 3 Cir., 233 F. 635.

[18] Ackerman v. Halsey, 37 N.J.Eq. 356, affirmed, 38 N.J.Eq. 501.

[19] Swope v. Villard et al., C.C.S.D.N. Y. 61 F. 417, 419. See also Hawes v. Oakland, supra; Porter v. Sabin, 149 U. S. 473, 13 S.Ct. 1008, 37 L.Ed. 815.

of those whom the court shall ultimately adjudge to be entitled to it.[20] It was the court's duty to decide whether or not the assets of Tobacco Products or more particularly whether the stock of New Jersey as one of the assets could be increased in value to the benefit of the estate by pursuing the claim for refund or would the estate incur expense, shall we say, in an endeavor to enforce a claim which would be nonproductive in the event the Virginia dissolution was determined to be tax free,[21] and the assessment the obligation of New Jersey. The court decided the matter should be handled in the manner more particularly set forth in the order. The plaintiffs think it is poor judgment to abandon the tax claim for refund, maybe they are right and they might have proved themselves so, if they had pursued their remedy in the State of Delaware. Instead they would have us say in effect to the managers of New Jersey, you are to ignore the court having possession of all the stock of New Jersey and the order of said court, and in the place and stead thereof we are substituting a receiver for New Jersey in order to take a course entirely different from the one taken by the chancellor of the State of Delaware. Is there any guarantee that the plaintiffs' course will be to the benefit of all the stockholders of Tobacco Products and the course set by the order will not? We do not have the case of a receiver who has refused to act or is himself involved. We have the case of a receiver who has instructions from the court appointing him on how he is to handle certain identified assets in the possession of the court.

This is not the court to test the fidelity of the receiver to the duties of his trust in the event he has misled the court in his petition, neither is the court to determine the soundness of the course taken.

The present manager of Tobacco Products is not Stores, the majority stockholder, it is not the directors and officers of Stores, who are said to have been identical with the officers and directors of Tobacco Products, it is the Court of Chancery of the State of Delaware, a tribunal, independent of and divorced from all of the influences which the plaintiffs say would jeopardize their stock to the advantage of Stores.

The United States Supreme Court has admonished us to avoid unseemingly and disastrous conflicts in the administration of our dual judicial system and to protect the judicial processes of the court first assuming jurisdiction[22].

## Conclusion

The motion of the defendant to strike the complaint should be granted, and it will be granted upon the presentation of the proper order.

---

[20] Union Bank v. Kansas City Bank, 136 U.S. 223, 10 S.Ct. 1013, 34 L.Ed. 341; Thompson, v. Phenix Insurance Co., 136 U.S. 287, 297, 10 S.Ct. 1019, 34 L. Ed. 408.

[21] Revenue Act, Section 111, 26 U.S.C. A.Int.Rev.Acts, p. 376; Section 112 as amended in 1932, 26 U.S.C.A.Int.Rev. Acts, page 511; Section 113 as amended in 1934, 26 U.S.C.A.Int.Rev.Acts, page 696, and Section 115 as amended in 1932, 26 U.S.C.A.Int.Rev.Acts, page 520.

[22] Penn. General Casualty Company v. Commonwealth of Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850; See, also, United States v. Bank of New York & Trust Company, 296 U.S. 463, 477, 56 S.Ct. 343, 80 L.Ed. 331; Pusey & Jones Company v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763; Lion Bonding & Surety Company v. Karatz, 262 U.S. 77, 88, 43 S.Ct. 480, 67 L.Ed. 871; Harkin et al. v. Brundage et al., 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457.