## OKLAHOMA CITY *v.* McMASTER.

### ERROR TO THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 137.   Argued January 18, 19, 1905.—Decided February 20, 1905.

The review by this court of final judgments in civil cases of the Supreme Court of the Territory of Oklahoma is not controlled by the act of 1874 in regard to territorial courts but by § 9 of the act of May 2, 1890, 26 Stat. 81, 85, providing the territorial government for Oklahoma, and in an action at law where a jury has been waived the review is by writ of error as in the case of a similar judgment of a Circuit Court, and not by appeal.

Where no formal judgment has been entered the plea of *res judicata* has no foundation; neither the verdict of a jury nor the findings of a court even though in a prior action, upon the precise point involved in a subsequent action and between the same parties constitutes a bar.

There was no permit for entry of lands in Oklahoma for town sites under the act of 1889 or until the town site act was passed May 14, 1890, and an agreement among a portion of the people who on April 22, 1889, chose lots upon a projected town site did not and could not vest an absolute title in persons selecting lots or make a plat or map of town final or conclusive; but the selectors took their lots subject to changes and conditions that might obtain—in this case as to location of streets— when the township patent was issued to, and a map finally approved by, the township trustees under the act of May 14, 1890.

THE facts are stated in the opinion.

*Mr. Frank Dale,* with whom *Mr. S. A. Magginnis, Mr. C. Porter Johnson* and *Mr. A. G. C. Bierer* were on the brief, for plaintiff in error:

The so-called findings and judgment of the District Court of Canadian County clearly did not constitute a judgment that could be set up as *res judicata*. *Child* v. *Morgan,* 52 N. W. Rep. 1127; *Auld* v. *Smith,* 23 Kansas, 65; *Massing* v. *Ames,* 36 Wisconsin, 409; *Taylor* v. *Runyan,* 3 Iowa, 474, 480; *Whilewell* v. *Hoover,* 3 Michigan, 84; *Lincoln* v. *Cross,* 11 Wisconsin, 94; § 5, 24 Am. & Eng. Ency. of Law, 2d ed., 717; *Masterman* v. *Masterman,* 51 Pac. Rep. 277; *Gordon* v. *Ken-*

*nedy,* 36 Iowa, 167; *Talesky* v. *State Ins. Co.,* 70 N. W. Rep. 187. McMaster did not acquire a vested right in the ground in the streets of Oklahoma City. *The Beamer Case,* 3 Oklahoma, 652, was rightly decided and the cases cited in the opinion of the Supreme Court of the Territory do not sustain the decision.

The power to correct the survey of Oklahoma town site vested exclusively in the political and not the judicial department of the Government. *McDaid* v. *Oklahoma Territory,* 150 U. S. 209, 220; *Knight* v. *United States Land Ass'n,* 142 U. S. 161; town site act of May 14, 1890, § 1; §§ 441, 443, 2478, Rev. Stat.

The writ of error and appeal were both taken to this court as a matter of precaution; as to which is proper practice and the effect of findings of the court below, see *Stringfellow* v. *Cain,* 99 U. S. 610; *Cannon* v. *Pratt,* 99 U. S. 619; cases cited by defendant in error; *Gray* v. *Howe,* 108 U. S. 12; *Salina Stock Co.* v. *Irrigation Co.,* 163 U. S. 190; *Teckendorf* v. *Teckendorf,* 171 U. S. 686; *United States* v. *Hooe,* 1 Cranch, 318; *Davis* v. *Fredericks,* 104 U. S. 618; *Thompson* v. *Ferry,* 180 U. S. 484; *Stone* v. *United States,* 164 U. S. 380; *Dickinson* v. *Bank,* 16 Wall. 250; *Insurance Co.* v. *Tweed,* 7 Wall. 44; *Haws* v. *Victoria Copper Mining Co.,* 160 U. S. 303, 313; *Gildersleeve* v. *New Mexico Mining Co.,* 161 U. S. 573.

*Mr. Chester Howe,* with whom *Mr. Francis J. Kearful* was on the brief, for defendant in error:

There being but one cause it cannot be in this court both by writ of error and by appeal. Either one proceeding or the other will have to be dismissed. *Hurst* v. *Hollingsworth,* 94 U. S. 111; *S. C.,* 100 U. S. 100; *Plymouth Mining Co.* v. *Amador Canal Co.,* 118 U. S. 264; *Files* v. *Brown,* 124 Fed. Rep. 133; *Lockman* v. *Long,* 132 Fed. Rep. 1. The writ of error should be dismissed. *Stringfellow* v. *Cain,* 99 U. S. 610; *Hecht* v. *Boughton,* 105 U. S. 235; *Story* v. *Black,* 119 U. S. 235; *Idaho Land Co.* v. *Bradbury,* 132 U. S. 509, 514. The judgment

should be affirmed as the testimony cannot be considered on an appeal but the consideration of this court is confined to the statement of facts and rulings certified by the court below. *Hecht* v. *Boughton,* 105 U. S. 235; *Marshall* v. *Burtis,* 172 U. S. 630. The judgment against the town site trustees was properly admitted and the matter was *res judicata.* It is permissible to assume from the general findings that defendant in error was entitled to the lot and the deed was arbitrarily withheld. *Fayerweather* v. *Ritch,* 195 U. S. 276, 307.

MR. JUSTICE PECKHAM delivered the opinion of the court.

On the twenty-second day of September, 1899, this action of ejectment was commenced by defendant in error in the District Court of the Third Judicial District of Oklahoma Territory, in Oklahoma County. It was brought to recover lands situated in a public street in the city of Oklahoma City. Judgment was entered for the defendant in error for the recovery of the land, and that judgment was affirmed by the Supreme Court of the Territory, and the plaintiff in error has brought the case here, both by writ of error and appeal, taking both courses as a precaution, in order to bring the case before us. It was tried by the court, a jury having been waived by the parties, and the defendant in error contends that where a case is thus tried in a territorial court, an appeal to this court is the only proper proceeding to obtain a review. Act of Congress, 1874, 18 Stat. 27, 28. The contention of defendant is not correct in this case. The manner of reviewing judgments, in civil cases, of the Supreme Court of the Territory of Oklahoma is specially provided for by the ninth section of the act of May 2, 1890, 26 Stat. 81, 85, providing a territorial government for Oklahoma, and is not governed by the act of Congress of 1874. *Comstock* v. *Eagleton,* 196 U. S. 99. The ninth section of the act of 1890 provides that writs of error and appeal from the final decision of the Supreme Court of the Territory will be allowed and may be taken to the Supreme

Court of the United States "in the same manner and under the same regulations as from the Circuit Courts of the United States," and it was held in the above case that final judgment in an action at law in the Circuit Court of the United States, can only be reviewed by writ of error. The assumption that because this case was tried before the court, a jury having been waived by consent, that therefore it ought to go up by appeal, is a mistaken one. In *Deland* v. *Platte County*, 155 U. S. 221, the case was an action at law where a jury had been waived and trial had before the court. Nevertheless, it was held that, as it was an action at law and the case came from a Circuit Court of the United States, it could only be reviewed by this court on writ of error. This case must, therefore, be reviewed by writ of error because it is an action at law, although tried by the court upon a waiver of a jury. The record shows a sufficient bill of exceptions, however, and the case is to be reviewed upon the record as thus presented.

Upon the trial, for the purpose of proving the issue upon his part, by means of evidence of a former adjudication, the plaintiff introduced in evidence what he contended was a judgment in his favor for the recovery of the same land in an action in which he was plaintiff and Edgar N. Sweet et al., town site trustees, defendants, and which was entered in the District Court of the Second Judicial District, county of Canadian, Territory of Oklahoma, on or before May 11, 1892, and recorded on the fourteenth day of May, 1892, in the county of Oklahoma. The plaintiff argued that the defendant (plaintiff in error) in the case at bar was bound as a privy by the adjudication in the former action. The paper was received in evidence by the court, and it is set forth at length in the record. It is evidently nothing but a finding of facts by the judge trying the cause. There was also a paper offered and received in evidence, signed by the trial judge in the same case, and dated the thirteenth day of October, 1893. This was an order made in the case by him at Kingfisher, in Kingfisher County, and was entered in that county on the thirteenth day of October, 1893,

the day of its date. The order directs the defendant to make, execute and deliver to Frank McMaster, the plaintiff, a trustee's deed, "as decreed by this court on the fourteenth day of November, 1892, of the following described premises and real estate." It is attempted to piece these two documents together, the finding of facts filed in Canadian County and thereafter recorded in the county of Oklahoma, and the order made in Kingfisher County and filed therein October 13, 1893, and to regard the whole as a judgment. It is plain that there has been no formal judgment entered in the case, and that these two separate documents, filed in different clerks' offices, cannot be pieced together and made a formal and complete judgment. Without a judgment the plea of *res judicata* has no foundation; and neither the verdict of a jury nor the findings of a court, even though in a prior action, upon the precise point involved in a subsequent action and between the same parties, constitute a bar. In other words, the thing adjudged must be by a judgment. A verdict, or finding of the court alone, is not sufficient. The reason stated is, that the judgment is the bar and not the preliminary determination of the court or jury. It may be that the verdict was set aside, or the finding of facts amended, reconsidered, or themselves set aside or a new trial granted. The judgment alone is the foundation for the bar. *Springer* v. *Bien,* 128 N. Y. 99.

Without resort to this (asserted) judgment in the action against the town site trustees, it is not urged that the defendant in error made out his case upon the trial. There was no judgment, and the "finding of facts" should not have been held to be such. For the error in the admission of the so-called judgment the case must be reversed.

We do not decide, even if there had been a technical and formal judgment entered, that such a judgment would be conclusive in favor of the plaintiff upon the trial of this action against the city of Oklahoma City. Whether the plaintiff in error would be regarded as a privy to such judgment, and, therefore, bound by it, it is not now necessary to decide.

The court is, however, indisposed to let the case rest upon the error pointed out. The question will arise upon another trial, as to the right of the plaintiff to recover upon the facts stated in the finding of facts in the action against the town site trustees. We think it proper to now look into those findings simply for the purpose of determining whether, assuming them to be facts, the plaintiff below made out a case which would entitle him to recover the land in suit. The Supreme Court of the Territory is of opinion that he did. Among the facts found on the trial of the case against the trustees are the following:

The trustees, appointed under the act of May 14, 1890, 26 Stat. 109, entered the land in the local land office at Oklahoma City, September 3, 1890, covering, among other lots, the premises in question, in trust for the "use and benefit of the occupants thereof." A patent from the United States was, on the first of October, 1890, issued to the trustees, for the land (covering over 160 acres), which patent was by its terms, in trust for the occupants of the town site, according to their respective interests. At neither date was the plaintiff below an occupant of the land in suit.

Prior to this time, and on the twenty-second day of April, 1889, the land had been opened for settlement under the proclamation of the President, pursuant to the act of Congress, approved March 2, 1889. 25 Stat. 980, § 13, p. 1005. The land in question, together with other lots, was settled upon and occupied as a town site shortly after noon of April 22, 1889, and has continued to be and is still so held and occupied.

A portion of the occupants of the tract, on the twenty-second day of April, 1889, tacitly agreed to a plat of the land into lots, blocks, streets and alleys, and the plaintiff on that day legally entered upon and occupied the piece or parcel of land, particularly described in the plat as his lots, and being the land recovered by him in this action. Subsequently to such occupancy, and prior to the entry of the land by the trustees, and to the conveyance by the Government to the trustees a different plat making a different arrangement of

streets, etc., was adopted and enforced by the parties occupying the town site. By the latter plat the parcel of land claimed by the plaintiff was thrown into the street called Grand avenue. The plaintiff did not consent, but objected to the second plat, and has never consented thereto or acquiesced therein. He was by the city authorities forcibly removed from the parcel of ground selected by him, and has since that time been forcibly kept from the occupancy thereof.

On the twenty-first day of April, 1891, he applied to the trustees of the city for a deed to the lot, but they declined to award it. The city of Oklahoma City has appropriated the land as a street, and did so appropriate the same long prior to the conveyance of the land by the United States to the trustees. The plaintiff was not an occupant of the tract at the time the United States conveyed the same to the trustees, but it was at the time used and occupied as a street by the city.

On these facts the plaintiff below did not make out his case. There was no unconditional vesting of title to the particular lot chosen by him on the twenty-second of April, by tacit agreement of some of the settlers, even though a map were made of the land showing the plaintiff in possession of a lot not in any public street of the city. Subsequently to the agreement upon a plat by some of the settlers, and prior to the conveyance to the trustees by the patent from the United States (October 1, 1890), the plat was altered and another plat adopted, by which the lot selected by the defendant in error became a part of a public street in the city. The defendant in error, in common with all others, chose lots upon a site which was intended as a town site, and took his lot subject to the conditions which might thereafter obtain. There was no portion of the Territory of Oklahoma open to settlement prior to the date fixed by the proclamation of the President under the act of March 2, 1889. That date was April 22, 1889. 26 Stat. 1544. It was provided by the act that after the proclamation, and not before, the Secretary of the Interior might permit the entry of land for town sites under Rev. Stat. sections 2387,

2388. The Secretary of the Interior gave no permit for entry of lands for town sites under the act of 1889. Again, the sections of the Revised Statutes plainly refer to an organized State or Territory, and Oklahoma was neither, on the twenty-second day of April, 1889. It was organized as a Territory May 2, 1890, 26 Stat. 81, and the special act to provide for town site entries in Oklahoma was not passed until May 14, 1890. 26 Stat. 109. Regulations for carrying out that act were promulgated by the Secretary of the Interior June 18 and July 10, 1890. 10 L. D. 666; 11 L. D. 24. It may be assumed that on April 22, 1889, it was supposed that the land now embraced in the city of Oklahoma City would be a town site, as it was stated on the argument at bar, and not disputed, that there was at that date a railroad station there, and there was every probability that a town would exist at that site. But there was no law for a present selection of land or lots for town sites on the twenty-second day of April, 1889. There was but a supposition that land actually selected on that day for a town site would eventually be approved. On May 14, 1890, more than a year after the lands were open to entry, and just twelve days after the act was passed providing for the temporary government of the Territory, an act providing for town site entries was passed. 26 Stat. 109. That act provided for trustees, to be appointed by the Secretary of the Interior, who were authorized to make entry for town sites on so much of the public lands, situate in the Territory of Oklahoma and then open to settlement, as might be necessary to embrace all the legal subdivisions covered by actual occupancy, for the purpose of trade and business, not exceeding twelve hundred and eighty acres in each case, for the several use and benefit of the occupants thereof, and the entry was to be made under the provisions of section 2387 of the Revised Statutes, as near as might be, and when such entry was made the Secretary of the Interior was to provide regulations for the proper execution of the trust by such trustees, including the survey of the land into streets, alleys, squares, blocks and lots when neces-

sary, or the approval of such survey as may already have been made by the inhabitants thereof, the assessment upon the lots of such sum as might be necessary to pay for the land embraced in such town site, the costs of the survey, the conveyances of lots, and other necessary expenses, including the compensation of the trustees. The maps and plats of streets, etc., to be surveyed were to be approved by the trustees, or they might approve the survey already made by the inhabitants thereof.

It seems, therefore, plain that a mere agreement among a portion of the people selecting lots for or in a projected town site, on April 22, 1889, did not and could not vest an absolute and unconditional title in the persons who thus selected such lots. The persons going on the land on that date and under the circumstances then existing did not have any law for the vesting of title to a lot as within a town site, by the mere selection of land at that time. There was general confusion and there were thousands of people entering the territory embraced within the proclamation, on that date. In *City of Guthrie* v. *Oklahoma*, 1 Oklahoma, 188, 194, the Supreme Court of the Territory, in speaking of these crowds, said.

"They were aggregations of people, associated together for the purpose of mutual benefit and protection. Without any statute law, they became a law unto themselves and adopted the forms of law and government common among civilized people, and enforced their authority by the power of public sentiment. They had no legal existence; they were nonentities; they could not bind themselves by contracts, or bind any one else."

The whole thing was experimental and conditional.

The selection of the lots in a proposed town site, made on the twenty-second day of April, 1889, not being final, neither was the plat or map of the proposed town site, as then, or soon after, agreed upon by some of the people, final or conclusive. The agreement upon the plat or map was liable to alteration; there was no absolute right to any particular lot, as it was

subject to future survey. It was all in the air. When thereafter, the trustees, under the statute, made a survey of the land into the streets, etc., or approved a survey already made by which the plaintiff's lot was placed in the public street of the city, it was his misfortune, where all had taken their chances, that he should draw a blank. The approval of a survey by the trustees, which placed this lot in a public street of the city, gives to the city the right to the possession of it, and to keep it open as such public street. The plaintiff not being an occupant of the lot at the time that the trustees made entry of the land, nor when the conveyance was made to the trustees by the Government, was not one of the parties included in the statute, which directed the entry for the town sites to be made by the trustees "for the several use and benefit of the occupants thereof."

The Supreme Court in *City of Guthrie* v. *Beamer*, 3 Oklahoma, 652, has held substantially the same views which we now state in the case at bar. We are unable to see any real difference in the principle governing the two cases, and we think the *Beamer* case was rightly decided.

The judgment of the Supreme Court of Oklahoma must be reversed, and the case remanded with directions for a new trial.

*Reversed.*