MENDELSON BROS. FACTORS, INC., Individually and as a Stockholder of ATLAS CORPORATION, Suing on Behalf of Itself and All Other Stockholders of ATLAS CORPORATION Similarly Situated, Respondent, *v.* ARTHUR SACHS and Eight Others, Individually and as Present or Past Copartners Doing Business under the Firm Name and Style of GOLDMAN SACHS & Co., PAUL SACHS and Another, as Executors of SAMUEL SACHS and HOWARD J. SACHS and Another, as Executors of HARRY SACHS, Deceased Partners of GOLDMAN SACHS & Co., Appellants, Impleaded with ATLAS CORPORATION, Defendant.

First Department, January 28, 1938.

*Walter H. Pollak* of counsel [*Samuel J. Silverman* with him on the brief; *Sullivan & Cromwell*, attorneys], for the appellants.

*Sidney S. Bobbé* of counsel [*Sidney S. Bobbé* and *Alexander Slater*, attorneys], for the respondent.

COHN, J. This is a stockholder's derivative action. It was instituted on behalf of Atlas Corporation, which on October 31, 1936, was formed by a consolidation of what was theretofore Atlas Corporation and the Pacific Eastern Corporation (formerly The Goldman-Sachs Trading Corporation). Plaintiff is a stockholder of the consolidated corporation and holds fourteen shares of the preferred stock out of a total outstanding of 496,292 shares, and sixty-four shares of the common stock out of 3,478,826 shares. This suit is to compel appellants, who are members of the partnership of Goldman, Sachs & Co., to account for profits not participated in by the Goldman-Sachs Trading Corporation and claimed to have been made by appellants when they were directors and managers of that corporation between December 4, 1928, and April 17, 1933. The acts complained of relate to specified underwriting transactions in the years 1929 and 1930. For convenience the Pacific Eastern Corporation (formerly The Goldman-Sachs Trading Corporation) will be referred to as the " corporation," new Atlas Corporation as the " consolidated corporation," and old Atlas Corporation as " Atlas Corporation."

The chief question presented is as to whether plaintiff's claim has been released by the directors of the corporation.

In April, 1933, stock control of the corporation had been acquired by Atlas Corporation. The management contract which had theretofore existed between the corporation and Goldman, Sachs & Co. was terminated and a new board of directors independent of appellants took control. To recover for the corporation improper profits alleged to have been made by appellants during the period Goldman, Sachs & Co. had acted as managers, various stockholders' suits were brought. In order to settle these suits, and in order to dispose of all claims arising out of their alleged wrongful acts, appellants made a written offer of settlement for a consideration therein set forth. The proposal to settle by its terms included not only the suits brought by stockholders, but also " any other claims of whatever nature that might be asserted against them * * *, whether or not heretofore asserted, arising out of any transactions or occurrences prior to the date of the releases."

The new directors of the corporation voted in August, 1933, to recommend acceptance of the offer to the stockholders. Upon a vote thereafter taken by the shareholders, over 3,000,000 shares were cast in favor, and only about 10,000 shares were voted against the approval of the settlement. In a suit subsequently instituted in Delaware, the Chancery Court refused to enjoin the settlement but sanctioned it as fair and reasonable. After this approval by the court, and in December, 1935, the offer was accepted by the corporation and the releases, which are set up as a bar to this action, were executed and delivered by the corporation to appellants.

The record shows that the transactions enumerated in plaintiff's complaint dealt with publicly advertised security issues; that the connection of the partnership of Goldman, Sachs & Co. with these very issues, as underwriters and bankers, was widely advertised in the public press during the years 1929 and 1930 and was a matter of common knowledge to persons in the financial district. At the time the offer of settlement was made to the corporation by appellants, there were then pending five stockholders' derivative actions brought in behalf of the corporation and against appellants. In them the entire history of the individual defendants' management of the corporation was assailed. Moreover, six months before the consummation of the settlement, plaintiff had brought a derivative action against appellants for a cause of action similar to the one now sued upon save that in that complaint underwriting transactions different from those set forth in the present complaint are specified. An examination of the complaints in the six actions

shows that they included the type of claims that the plaintiff here asserts, that is, claims for profits made by appellants in banking and underwriting transactions, in which profits the corporation did not participate. In the light of these facts it cannot reasonably be urged that the directors did not know of plaintiff's claim when the releases were executed.

Atlas Corporation, the corporation and the consolidated corporation were all incorporated under the laws of the State of Delaware. The question of the fairness and propriety of the settlement, before its consummation, was tested out in the Chancery Court in Delaware in an action brought by Tillie Karasik against Pacific Eastern Corporation. A master in chancery in that State, to whom the issues were referred, after protracted hearings, recommended that the settlement be upheld and that the complaint, which sought to restrain its enforcement, be dismissed. Upon the master's report the chancellor entered a decree dismissing the complaint on the merits (—— Del. ——; 180 A. 604), from which decree no appeal was taken.

It was only after a long period of negotiations and final determination of the suit in Delaware that the directors of the corporation concluded to accept the offer of settlement and to deliver the releases to appellants. These releases embraced all existing claims, including, as the offer of settlement in express words provided, those " that might be asserted  *  *  *, whether or not heretofore asserted." The corporation thus intended to release claims which were unknown as well as those which were specifically known. The Delaware master so found, for in his report he stated: " There is every reason to believe that the directors, thinking it more than probable that all possible claims against the defendant had been made in the stockholders' suits deemed it wise to run the slight risk of others being afterward discovered and did intend to accept the offer of settlement and release all possible additional claims."

Furthermore, the record shows that in accepting the settlement, the directors of the corporation acted independently of appellants and without their domination or control. No one of the appellants is now a director of the corporation and at the time the releases were executed by the corporation but one appellant was a director. However, the latter took no part in the proceedings which resulted in the confirmation of the adjustment. The releases were negotiated between the parties through separate attorneys without any direction or participation on the corporation's side by appellants. Whether plaintiff's claim was specifically known or not, it was embraced by the releases and the agreement of settlement. In

the absence of fraud or bad faith the corporation had the right to forego recovery for unknown as well as known causes of action. (*Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182, 188.) Such a settlement, the honesty of which is no longer open to question, in the circumstances of this case, was valid and binding upon the corporation and all its stockholders, including the plaintiff. (*Steinway* v. *Steinway*, 2 App. Div. 301; affd., 157 N. Y. 710; *Grant* v. *Greene Consolidated Copper Co.*, 169 App. Div. 206; affd., 223 N. Y. 655; *Continental Ins. Co.* v. *N. Y. & H. R. R. Co.*, 187 id. 225, 238.)

Upon the proofs submitted, it is amply demonstrated that the settlement effected between the corporation and appellants was binding upon this plaintiff, that the releases executed and delivered by the corporation to appellants were clearly intended to include plaintiff's claim, that plaintiff's right of recovery is barred by the releases, and that the complaint should be dismissed.

In view of this disposition it is unnecessary for us to pass upon the other two grounds urged for the dismissal of plaintiff's complaint, namely, that plaintiff has no capacity to sue and that the complaint does not state facts sufficient to constitute a cause of action. However, if it had appeared upon the face of the complaint, as it does in the affidavits of appellants, that appellants (who are the alleged wrongdoers) are not now in control of the corporation, plaintiff would have been required to show in its complaint not only that the corporation has a cause of action against appellants but also a demand upon the directors of the corporation to sue and a refusal by them " not based upon the exercise of a reasonable discretion " (*Koral* v. *Savory, Inc.*, 276 N. Y. 215; *United Copper Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261) or a refusal due " to fraud, bad faith or misconduct * * * amounting to a breach of trust." (*Koch* v. *Estes*, 146 Misc. 249, 253; affd., 240 App. Div. 829; 264 N. Y. 480; *Hawes* v. *Oakland*, 104 U. S. 450, at pp. 456, 457; *MacDougall* v. *Gardiner*, L. R. 1 Ch. D. 13, 22 [1875].)

It may be noted that the record in this case convincingly shows that the refusal of the present directors to sue on plaintiff's claim was based upon the exercise of a reasonable discretion and was not in any sense a breach of trust. The directors were, of course, fully aware that a predecessor board of directors, acting in good faith and supported by an almost unanimous vote of all the shareholders, for good and valuable consideration, had released all claims of the corporation of every nature against appellants and that the propriety and reasonableness of the settlement in which the general releases were delivered had been judicially approved in a court of competent jurisdiction after a full and fair hearing.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion should be granted dismissing the complaint upon the merits.

MARTIN, P. J., TOWNLEY and DORE, JJ., concur; O'MALLEY, J., concurs in result.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted dismissing the complaint on the merits.