**WINKELMAN et al. v. GENERAL MOTORS CORPORATION et al.**

District Court, S. D. New York.

Nov. 4, 1942.

See, also, D.C., 39 F.Supp. 826; D.C., 44 F.Supp. 960.

For attorneys, see 48 F.Supp. 485, and the following attorneys:

McCauley, Spiegelberg, Davis & Gallagher, of New York City (A. N. Davis, of New York City, of counsel), for stockholders.

Raymond L. Wise, of New York City (Raymond L. Wise and James McInerney, both of New York City, of counsel), for Irving White.

Hays, St. John, Abramson & Schulman, of New York City (Seymour M. Heilbron, of New York City, and Lowell M. Goerlich, of Toledo, Ohio, of counsel), for Mrs. P. H. Lamb, stockholder.

Paul J. Kern, of New York City, for stockholders.

John S. McCook, of New York City, and John W. Giesecke, of St. Louis, Mo., for Annie E. Meier and others.

LEIBELL, District Judge.

The present application involves a proposed compromise of this consolidated stockholders' derivative action. Rule 23 (c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section, 723c. On April 10th, after a lengthy trial and the consideration of voluminous briefs and findings of fact, I filed my decision herein, together with an opinion. D.C., 44 F.Supp. 960. The various issues, concerning the adoption and administration of the General Motors Corporation bonus plans, were separately discussed and determined. I held that the bonus plans had been legally adopted by the stockholders. The period of the administration of the plans under review covered the years 1930 to 1940 inclusive. For certain specified reasons set forth in the Findings of Fact, I held some of the defendants liable in various amounts, for a total of $4,348,044, with interest (which at 6% would amount to a further sum of $2,335,281.00 to October 1, 1942).

After the decision was filed and as a result of negotiations initiated by the defendants, an offer of settlement was formally submitted by them on September 2, 1942, in the sum of $4,000,000, to be paid by the defendants named in the consolidated amended complaint and by others, in amounts arranged among themselves. The scope of the proposed settlement went beyond the issues actually litigated and decided. As stated in the offer of settlement, which was made without prejudice, the acceptance of the offer would be, "* * * in full discharge and satisfaction of all claims by General Motors Corporation against all persons listed on Exhibit A attached hereto, all persons named as defendants in the Winkelman case, all present and former officers and directors of General Motors, and all bonus recipients, by reason of any act or omission of any person or persons done or occurring before August 7, 1941 (the date of the close of trial in the Winkelman case), with respect to any matter or thing connected with or growing out of the General Motors Corporation Bonus Plan, Managers Securities Plan or General Motors Management Corporation Plan, or the compensation by General Motors of any of its

officers, directors and employes, or any matter or thing covered by any of the original or amended complaints in the Winkelman case, or any matter or thing considered (whether or not decided) in the opinion, findings or conclusions of the Court in the Winkelman case, or by reason of any expenses borne by General Motors Corporation in connection with the foregoing litigation, and shall, immediately upon receipt of the $3,800,000 cash and the $200,000 note, give to each of the persons listed on Exhibit A attached hereto a release in the form set forth on Exhibit B attached hereto, except that the release to the maker of the $200,000 note shall be delivered to him only when he discharges the note." [Recently, I was advised by letter that cash will be substituted for the $200,000 note.]

Because of the size of the offer I signed an order on September 4th, pursuant to Rule 23, F.R.C.P., directing that a hearing be held on the question of the approval of the settlement proposal.

Rule 23(c), F.R.C.P. provides: "(c) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court. If the right sought to be enforced is one defined in paragraph (1) of subdivision (a) of this rule notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. If the right is one defined in paragraphs (2) or (3) of subdivision (a) notice shall be given only if the court requires it." [Paragraph (1) of subdivision (a) includes secondary or derivative rights which a member of a class becomes entitled to enforce if the owner of the primary right refuses to do so.]

The purpose of the notice required by the Rule is stated by Judge Allen in Cohen v. Young, 6 Cir., 127 F.2d 721, at page 725 as follows: "The rule provides for notice to stockholders not only in order that they may have the right to be heard but also in order that the court may have the benefit of that broader information which comes from receiving advice as to the views of all parties concerned and from considering evidence proffered by them upon the relevant points of the case. In other words, the rule was adopted to secure not routine approval of a consent decree, but in order to insure supervision of the court for the protection of the corporation and all the stockholders. Cf. McLaughlin, op. cit., supra."

■ The role of the Court on the compromise of a stockholder's derivative action is described by Mr. Justice Rosenman in Neuberger, &c. v. Barrett et al.,[1] June 25, 1942. He wrote:

"The role of the court is to see that the compromise is fair and reasonable under the circumstances and that no collusion or fraud has been practiced in the consummation of the settlement. To do this the court must weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented. If such considerations lead to the conclusion that the settlement agreed upon by the plaintiffs in the suit is not unfair or unreasonable to the corporation (in which all the other stockholders have their interest), then the action of the plaintiffs in compromising the suit should be approved."

A form of notice of the hearing on the proposed settlement was mailed to the Corporation's 400,000 stockholders. The total number of General Motors shares of common stock outstanding is about 43,000,000. A printed copy of the notice, the offer of settlement, the form of release and a list of those contributing to the settlement, were annexed to the petition on which the September 4th order was entered, fixing October 5th as the date of the hearing. The notice stated that a copy of the Court's opinion and findings of fact and conclusions of law would be sent to any stockholder upon request. The stockholders were also informed that the minutes of the trial, exhibits, briefs and other papers were available for inspection at the offices of the attorneys for the parties to the litigation. Less than two score stockholders requested copies or communicated with the attorneys on the proposed settlement or wrote to the Court. This may be due either to the small amount per share involved (less than 10¢) or to the fact that the stockholders had no objection to the settlement.

■ On the day of the hearing five attorneys appeared and objected to the settlement on behalf of stockholders owning about 6,000 shares. Their objections were directed to the form of the notice, the terms and scope of the settlement, and the power of the Court to approve the settlement under Rule 23, F.R.C.P.

---

[1] No opinion for publication.

The criticism of the notice of the hearing on the proposed settlement, attacked certain statements contained therein and the notice as a whole. It was argued that the notice was unfair, that it gave a stockholder a wrong impression of what the Court had decided, and that it was more commendatory of the defendants' business ability as executives of General Motors Corporation than it was critical of their conduct in the administration of the bonus. I am of the opinion that the notice was a clear, complete and fair presentation of the contentions of the plaintiffs and defendants on the various issues litigated, together with the Court's decision thereon. Of course, all that was said in the Court's April 10th opinion of 117 pages and its September 4th memorandum of 10 pages, 48 F.Supp. 485, could only be summarized in the 19-page notice. The expense of sending a copy of the Court's opinion to all 400,000 stockholders would have been too great (apart from the burden on the mails) to have justified mailing it in the first instance. But any stockholder who desired it was sent a copy on request.

The objectants seem to be especially critical of the fact that defendants were permitted to state in the notice their side of the case. That they should do so, in view of their substantial offer of settlement, seemed proper. Further the offer was made without prejudice, in the event that it was not approved. What the plaintiffs contended in respect to the issues on which the defendants had been successful, was also stated in the notice. The determination of the issues, as made by the Court, was correctly set forth in each instance. Although defendants expressly disclaimed liability, they nevertheless were offering $4,000,000 in settlement and it may reasonably be assumed that any stockholder who considered the disclaimer, weighed it against the size of the offer.

Objection is made that the Court under Rule 23, F.R.C.P. is without authority to pass upon the offer of settlement at this advanced stage of the litigation and cannot authorize a release of possible claims which were not included in the issues litigated. On April 10th the Court filed its decision herein but no judgment has as yet been entered. Certain objectants argue that the Court's decision is tantamount to a judgment; that if a judgment had been entered the Court would lack the power to give its approval to an offer of settlement and therefore the Court cannot now consider the compromise and express an opinion thereon. Of course, the findings of the court, like the verdict of a jury, have not the same effect as a judgment in a plea of res judicata. Oklahoma City v. McMaster, 196 U.S. 529, 25 S.Ct. 324, 49 L.Ed. 587. Further, the decision of the Court and the judgment to be entered thereon are not the same thing under the Federal Rules of Civil Procedure. The decision is part of the procedure of the trial. Rule 52, F.R.C.P. on "Findings" is a part of Chapter VI relating to "Trials". Judgments are dealt with in a separate chapter, VII, in Rules 54 to 58. Although "the court's decision of a case is its judgment thereon" (Rogers v. Hill, 289 U.S. 582, at page 587, 53 S.Ct. 731, at page 734, 77 L.Ed. 1385, 88 A.L.R. 744), it does not follow that it is its judgment therein, meaning the judgment or decree thereafter entered on the decision. The Federal Rules of Civil Procedure make a clear distinction between the decision (the Findings of Fact and Conclusions of Law) and the judgment. The term "action" does not mean a "cause of action" under the Federal Rules of Civil Procedure. Indeed, the expression "cause of action" is avoided in the Rules and the word "claim" is used instead. Pleadings set forth the "claims" and defenses of the parties. Rule 8. Rule 2 provides that there shall be one form of action to be known as "civil action", which is commenced by filing a complaint with the court. Rule 3. We are advised in Note 2 under Rule 2 that "Reference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules". The entry of judgment probably terminates the action, at least so Rule 54(b) implies. But until judgment is entered the action is certainly still pending and Rule 23(c) relating to the dismissal or compromise of "a class action" would apply. Before the adoption of the rules the Circuit Court of Appeals for this Circuit held that a "suit was 'pending' until the judgment was satisfied." Becker Steel Co. v. Hicks, 66 F.2d 497, at page 500.

Even a narrow construction of the language of the Rule would require its application to a dismissal or compromise of the action before the action terminates in a judgment. Mr. Justice Shientag of the New York Supreme Court, in Manufacturers Mutual v. Hopson et al., 176 Misc.

220, 25 N.Y.S.2d 502, 507, referred to Rule 23(c), F.R.C.P. and observed that it "would apply to a discontinuance as well as to a settlement before or in the course of trial". The New York Supreme Court has no rule similar to Rule 23, F.R.C.P. But the decisions of that Court in recent years providing for publicity and notice in the settlement of stockholders' derivative suits against directors, represent the development of a like policy, made necessary by inequitable practices resorted to in some private settlements of stockholder derivative actions. The New York Law Revision Commission suggests the addition of a new section to the General Corporation Law, similar to Rule 23(c), F.R.C.P.

The federal rule 23(c) requires that notice of the proposed settlement of a stockholder's derivative action be given to all the stockholders and that the action be not compromised without the Court's approval. Is that requirement applicable once judgment has been entered? In Chlupsa v. Posvic, 113 F.2d 375, 376, the Circuit Court of Appeals for the Seventh Circuit held that Rule 23(c) had no application to the situation presented where, as a result of a creditors' class action against certain defendants for an accounting of assets of a bank converted to the defendants' use, a judgment had been entered in favor of the Receiver of the Bank, a nominal party defendant. The Court said that "From that time on the receiver would have been entitled to the proceeds realized from such judgment and the situation is clearly within the provision of the statute [12 U.S.C.A. § 192] which authorized him to petition for leave to compromise". In Albrecht v. Bauman, 130 F.2d 452, 454, the United States Court of Appeals for the District of Columbia had occasion to discuss Rule 23(c), F.R.C.P. in relation to the old case rule that in a creditors' class bill the plaintiff creditor controls the litigation as "dominus litis" and that "until decree the other creditors had no interest in the suit". Chief Justice Groner wrote (page 454 of 130 F.2d):

"And so far as we are able to determine, this is also the rule in those States in which the question has arisen, was the rule of the District of Columbia and the federal courts when the suit against Smith Company was dismissed, and is still the rule except insofar as Rule 23(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, now modifies it by requiring approval of the court before dismissal may be had."

Notice, as well as approval, is required by the Rule if the suit is a stockholder's derivative action.

It would seem that where the corporation's affairs are under the control of a board of directors, the adequacy of the settlement of a judgment obtained in a stockholder's action would be for the board to decide, if the board is disinterested and not involved in the litigation. The approval of the stockholders could also be sought as a precautionary measure. But in the present case there would be a serious obstacle to such a course, once judgment is entered, because most of the present board of directors of General Motors Corporation are defendants herein and they control large blocks of stock, although not a majority of the stock. U. S. Lines Inc. et al. v. U. S. Lines Co. et al., 2 Cir., 96 F.2d 148, 152. However, even in such a situation, I do not believe that Rule 23(c) would bar this court, if it were asked to do so, from itself inquiring into the matter and expressing its views as to the adequacy of a proposed settlement of a judgment, after notice to all stockholders. That would be an aid to the administration of justice; it would assist in properly ending the litigation; and the Court's sanction of the settlement would make less likely the institution of further stockholders' actions based on the alleged inadequacy of the settlement itself. The New York State courts have set a precedent for that procedure. They have approved the settlement of stockholders' actions after the Court's decision had been filed in the action (Litwin v. Allen, Sup., 25 N.Y.S.2d 667, judgment on settlement, N.Y.L.J. May 2, 1941) and after judgment had been entered. Heller v. Boylan, Sup., 29 N.Y.S.2d 653, affirmed 263 App.Div. 815, 32 N.Y.S.2d 131. I am of the opinion that a compromise of this stockholder's action in its present stage (after decision but before the entry of judgment) could not be legally made without complying with Rule 23(c) as to notice to stockholders and Court approval, and that the Rule would not bar the Court from approving a fair and adequate compromise of a judgment, if entered on the Court's decision herein.

Another question presented is whether the Court has the power under

Rule 23(c) to include in the compromise claims other than those pleaded in the consolidated amended complaint. The rule specifically relates to the compromise of an action pending in the court. I believe that an offer of compromise may include related claims not actually pleaded in the action. In the New York courts compromises have been approved which included claims not embraced within the pleading (General Investment Co. v. Warriner, 260 App.Div. 856, 23 N.Y.S.2d 480) and general releases of all claims, whether litigated or not, have been held binding in a later stockholder's suit. Mendelson Bros. Factors Inc. v. Sachs, 253 App.Div. 270, 1 N.Y.S.2d 838; affirmed 279 N.Y. 604, 17 N.E.2d 459. It would seem also that persons who may be liable, in addition to defendants served or appearing in the action, may be included in the settlement. Adams v. Lang (Crocker Wheeler Elec. Mfg. Co.) New York County Clerk's Index No. 29185/1936; Lesire Corp. v. American Commercial Alcohol Corp.,[1] New York Supreme Court (1938); Phillips v. Cities Service Co.,[1] U. S. District Court, Southern District of New York, E 77-6 (1937). Judicial husbandry would support such a course where all the facts are known, and the claims and the persons involved are definitely ascertainable. However, broad general releases should be avoided, unless there is no basis for believing that there are any other claims. In Heller v. Boylan the release was limited to all claims embraced within the scope of the consolidated amended complaint in that action.

▮ Strong objection has been made against the inclusion, in this proposed settlement, of any claims of General Motors Corporation against Mr. Raskob, Mr. Pierre S. duPont and their Regent Corporation for the benefits realized by them as a result of the transaction of June 4, 1930, by which 2,400 Managers Securities Company Class B shares owned by Regent Corporation were exchanged for 243,392 shares of General Motors common stock owned by General Motors Corporation. Certain of defendants' attorneys insisted that this claim, whatever its status or validity, be included in the claims to be settled. Mr. Raskob and Mr. Pierre S. duPont are contributing to the settlement fund. There has been no judicial determination of the validity of the claim. The Regent Corporation and Mr. duPont were not served in any of the consolidated actions, and the one action in which Mr. Raskob was served was dismissed because the plaintiff stockholder sold her stock before trial. Mr. Raskob's attorneys were unwilling to have him appear in any of the other consolidated actions. The dismissal was not on the merits and was directed at the beginning of the trial, when nothing was known of the June 4, 1930, transaction. The claim is not free from doubt and the Statute of Limitations may be a bar if the claim is otherwise good. But it is sizable. For that reason, it seems safer to eliminate it entirely from the settlement. Whatever may be its merits or defects can be left to the hazards of litigation.

▮ Objection has also been made to the inclusion in the settlement of claims against the defendants which may have arisen prior to May 27, 1929, the earliest date on which the plaintiffs acquired their General Motors stock. Under Rule 23(b) the Court could not grant any relief in these actions on any such claims and they accordingly were not judicially determined. Some of them were for excessive compensation to executives, which are probably barred by the Statute of Limitations of New York State. One of the objectants' attorneys believes that the laws of other States may not bar a suit thereon. It was also argued that there may be claims for secret profits and for damages resulting from acts or conduct of the defendants prior to May, 1929. There were some transactions indicated in Exhibits 56 and GGG and discussed in the opinion, which were not the subject of full judicial inquiry in the present action, because of the date limit fixed under Rule 23(b). Until all the facts are known, it cannot be stated positively that there are no such claims or that they are unenforcible because of the Statute of Limitations. The amounts involved are large.

There is some point too, in the objection that groups of persons, not named as defendants and who are not contributing to the settlement, would nevertheless under the terms of the offer be released from any claims of the Corporation, of a certain general category, although the true nature and extent of the claims, if any, are not now known. If there are no additional valid claims actually released by the inclusion of such persons within the benefits of the settlement, there should be no objection to lim-

---

[1] No opinion for publication.

iting the settlement to those who are named as defendants in the consolidated amended complaint and who contribute to the settlement.

In deciding the question of the fairness and adequacy of the offer of settlement in this case, I assume that the defendants are financially able to pay any judgment that may be entered on the Court's decision filed April 10, 1942. Thus one of the elements usually considered, the ability of the defendants to pay the judgment, which was raised in the Heller v. Boylan case, is not present here. The principal reasons urged for accepting the offer of $4,000,000 are that (1) some of the items on which judgment was directed against the defendants, either actually or equitably overlap; (2) other items, in whole or in part, may not be sustainable on appeal.

Two of the largest items decided against the defendants were the $1,540,930 so-called equalization payment of February 11, 1930, and the $1,041,010 item, representing 10% of the alleged non-recurring and non-operating profit of $10,410,100 included in the Corporation's 1930 income.

The equalization payment was charged against the 1930 bonus fund although it was not a true bonus payment. It was a payment in satisfaction of alleged claims, and, if proper, they were payable, as any other claims, out of the general funds of the corporation. I held that the equalization payment was in fact a gift and constituted a misuse and waste of corporate assets. Finding of Fact No. 116. If the equalization payment had not been charged against the bonus fund the amount distributable as a bonus for the year 1930 would have been $1,540,830 greater; and if the non-recurring and non-operating profit of $10,-410,100 had not been included in calculating the bonus base, the amount available for bonus purposes would have been $1,041,010 less. So that with those two items eliminated the fund available for strictly bonus purposes for the year 1930 would have been approximately $500,000 larger than the net amount actually distributed for genuine bonus purposes. The net result is that out of funds properly available for bonus purposes $500,000 was applied towards the payment of the equalization payment, which would otherwise have been expended in bonuses. It had been the practice to distribute almost the full amount available for bonuses in each year, but any undistributed part of the bonus fund could be carried over and distributed in a subsequent year. Indeed, there was added to the bonus fund for the year 1930 an undistributed bonus balance of $696,013 from the year 1929 (Ex. 39), in order to help swell the bonus fund so that it could take care of the equalization payment.

■ Defendants' contention that the two items of the $1,540,830 equalization fund and the $1,041,010 improper addition to the 1930 bonus fund overlap to the extent of $1,000,000 is unfounded. An appellate court might sustain one and disallow the other. Plaintiffs' counsel concedes an overlapping of $68,365. This would be included in the $500,000 above mentioned. But there is a solid basis for the argument that in determining what would be a fair and adequate settlement the Court should consider that $500,000 of the bonus fund, used in paying the equalization payment, would otherwise have been disbursed as bonuses and would not have remained in the coffers of the General Motors Corporation. The total of the two items $1,540,-930 and $1,041,010 is $2,581,940. I believe that a fair settlement figure of the two should reduce their total by $500,000.

■ The decision herein held two of the defendants liable for $489,206, the value of certain forfeited stock later reawarded. The original bonus plan of 1918 had provided that any bonus stock, later forfeited, should revert to the corporation. In March, 1920, the directors amended the plan to provide that forfeited bonus shares should revert to the bonus fund. I held that the adoption of the amendment was a breach of trust and that the two directors, who as members of the 1920 Board voted for the amendment, again breached their fiduciary duties each time they voted to reaward forfeited stock in subsequent years. The value of the forfeited stock reawarded for the bonus years 1930 to 1940 inclusive amounted to $489,-206. It can be argued with some support in the decided cases (Schmidt v. Merchants Despatch Trans. Co., 270 N.Y. 287, at page 300, 200 N.E. 824, 104 A.L.R. 450), that the breach of fiduciary duty occurred when the amendment was adopted in 1920, and that the subsequent rewarding of the forfeited stock by the Board of Directors pursuant to the amendment only precipitated the damage sustained; that the

claim or cause of action arose when the duties were breached in 1920 not when the stock was reawarded in subsequent years under the 1920 amendment. The statute of limitations would bar the claim on the latter theory. A question of law is involved, not an issue of fact, and an appellate court would not be hampered by the trial court's findings of fact. The legal question is novel. There do not appear to be any cases directly in point. For the purposes of settlement this claim should be reduced by $200,000.

■ Several of the defendants were held liable because they approved a method of calculating the bonus by which there were included in earnings and hence in profits, the increments on the Treasury stock used in paying the bonus. This was discussed in my April 10th opinion under the heading "Inclusion of Treasury Stock Increments in the Bonus Base" [44 F. Supp. 989] and it was the subject of Findings of Fact Nos. 153 to 227. I pointed out that a letter of the New York Stock Exchange Listing Committee, dated January 21, 1932 recommended that corporations should not include in their Income Account the "difference between cost and subsequent retirement or resale of the Company's own stock". I also stated that "opinion among accountants steadily crystallized between 1932 and 1938 against the inclusion of gains on the resale of Treasury stock in the income account of a corporation". On April 8, 1938, a Committee on Accounting Procedure of the American Institute of Accountants made a report to its Executive Committee to that effect, and on May 10, 1938, the Securities and Exchange Commission issued an Accounting Release holding that such profit was surplus and should be considered as capital, not income. In March of 1934 an alleged profit on the use of Treasury stock in the payment of bonuses found its way into the 1933 bonus fund to the extent of $100,744, and in April, 1937, the bonus fund was in like manner increased to the extent of $301,741, for the year 1936. Whether the directors were bound by the expression of opinion of the New York Stock Exchange in 1932 or were free to follow another recognized accounting practice of including the Treasury stock profits in income until the opinion of accountants finally crystallized on the capital or surplus treatment of such profits, is arguable. I held certain directors liable for these items from 1932 on. An appellate court might decide that they were free to make a choice of the two opposite accounting theories until 1938. At any rate $402,484 of the total of approximately $1,249,949 involved in this one issue is open to attack on appeal. Of course, the defendants contend that they are not liable for any part of the total sum. For the purpose of settlement it would be wise to reduce the amount allowed on this issue by $400,000.

With the above deductions of $500,000 from the total of two items (the equalization payment $1,540,830 and the bonus percentage of $1,041,010 on the non-recurring profit item of 1930), plus $200,000 from the forfeited stock item of $489,206, and $400,000 from the items of profits ($1,249,949) on the sale of Treasury stock, the amount of the judgment (exclusive of interest) would be reduced to $3,248,044. I believe that there should be added to that sum the loss of $427,645 suffered by General Motors Corporation, resulting from the Raskob-Brown transaction of June 4, 1930 (Finding 379) even though I held this item barred by the Statute of Limitations (by four months). This would bring the total to $3,675,689 without interest.

■ In Gallin v. National City Bank, 155 Misc. 880, 902, 281 N.Y.S. 795, the directors were charged 3% interest, even though they had not personally profited by their acts. In Heller v. Boylan, Sup., 29 N.Y.S.2d 653, 705, the directors were not charged any interest, although they had actually received the bonus payments for which judgment was rendered. There are two items in this case on which I believe the defendants should be charged 3% interest, the equalization payment of $1,540,830 (12 directors received about $841,500 of this amount) and the $427,645 loss on the Raskob-Brown transaction (barred by the Statute of Limitations). Interest on $1,540,830 for 12 years at 3% per annum would be $554,698, and the interest on $427,645 for 11 years at 3% amounts to $141,122 on the second. This would mean a total interest charge of $695,820 which when added to the principal amount of $3,675,689 above mentioned would bring the total to $4,371,509. On a compromise I am of the opinion that no interest should be charged on the other items, because in great measure they went to the thousands of participants in the General Motors bonus fund who earned what they received.

The offer of settlement provides that among the claims for which it shall be accepted in full discharge and satisfaction is any claim "by reason of any expenses borne by General Motors Corporation in connection with the foregoing litigation". No counsel fees were paid by General Motors to any attorney appearing separately for the individual defendants, but Mr. Smith, the general counsel for the Corporation, also appeared in the litigation for himself and a number of the defendant directors, some of whom have since retained their own counsel. Mr. Smith received compensation from the Corporation as its general counsel and so did members of his staff. In addition to their regular legal duties, they acted as attorneys in opposing plaintiffs' stockholder's suit. Some of the time they gave to this case kept them from their other duties. Several experts who testified at the trial were compensated by the Corporation. A large part of the work of the Corporation's accountants in preparing schedules and charts for the trial, was performed at the request of the plaintiffs' attorneys or of the Court. It is not possible to estimate approximately the total cost of the litigation to General Motors Corporation, but in any settlement I believe that there should be added, on this score, $125,000 to the above total and that the settlement figure should, in round figures, be four and one half million dollars ($4,500,-000).

I have again considered the items on which the defendants were successful in this litigation and I believe that the decision in respect to those items will be affirmed, if they are reviewed by an appellate court. In determining the adequacy of the settlement the Court must weigh the probabilities of a successful appeal. Neuberger v. Union Carbide,[1] June 25, 1942; Beeber v. Empire Power Corp., Sup., 31 N.Y.S.2d 914. Stockholders' actions, resulting in large judgments against directors are not always sustained on appeal. In Everett v. Phillips, Sup., 22 N.Y.S.2d 852, the trial court rendered judgment for about $5,000,-000. This was reversed by the Appellate Division, 261 App.Div. 1082, 26 N.Y.S.2d 881, and the reversal was affirmed by a 4 to 3 decision of the New York Court of Appeals. 288 N.Y. 227, 43 N.E.2d 18. Likewise in another stockholder's suit, Hodgman v. Atlantic Refining Co., D.C.,

300 F. 590, a judgment for over three and a quarter million dollars was reversed by the Circuit Court of Appeals, 3 Cir., 13 F. 2d 781, and the United States Supreme Court refused to review the case, 273 U.S. 731, 47 S.Ct. 240, 71 L.Ed. 863.

I have concluded that the proposed compromise or settlement should be disapproved unless:

(1) There shall be specially excluded from the settlement any claim of General Motors Corporation against the Regent Corporation, John J. Raskob and Pierre S. duPont for any benefits realized by them as a result of the exchange on June 4, 1930, of 2,400 Managers Securities Class B shares owned by Regent Corporation for 243,392 shares of General Motors common stock owned by General Motors Corporation.

(2) The settlement shall be limited to the issues judicially determined on the merits, as set forth in the Conclusions of Law filed herein on April 10, 1942. This would, of course, exclude from the settlement (a) any claims of General Motors Corporation arising from acts or conduct of any of the defendants prior to May 27, 1929 (the earliest date on which the plaintiffs acquired their stock), which may have resulted either in profits or benefits to defendants or in damage to the corporation; and (b) any claim of General Motors Corporation against any of the defendants for excessive compensation paid to them prior to that date.

(3) The settlement shall be made only with those named as defendants in the consolidated amended complaint herein who contribute to the amount of the settlement. It shall be a settlement of their liability only.

(4) The amount of the offer shall be increased by $500,000 to $4,500,000.

If the above limitations on the scope of the settlement and the recommended increase in the offer are agreed to by the defendants, their attorneys will so advise the Court in writing as soon as possible. I shall then grant leave to intervene, solely for the purpose of having the fairness and adequacy of the settlement reviewed on appeal (Neuberger v. Barrett et al., supra; Stockholders Suits, 42 Col.Law Rev. 574, 576) to such of the objectants as may wish to appeal the Court's determination of that

---

[1] No opinion for publication.

question. The Sixth Circuit has held that an objectant to the compromise has the right to appeal from the Court's approval of the compromise and does not require an order of intervention for that purpose. Cohen v. Young, supra.

If the conditions hereinabove set forth are not acceptable to the defendants, the plaintiffs' attorneys will submit, on notice to defendants' attorneys, a proposed judgment pursuant to the Conclusions of Law filed on April 10th, 1942. In that event I shall deny all petitions for leave to intervene. Plaintiffs' attorneys have carried to a successful conclusion the heavy burden of the trial, and I am sure they will be able to take care of the appeal. I shall defer ruling on the applications for allowances until I know whether or not the action will be settled.